ALICE FITZGERALD, ADMINISTRATRIX, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED MARCH 13, 1915. No. 17,969.

1. **Negligence**: QUESTIONS FOR JURY. Issues of negligence and contributory negligence are questions for the jury, where the evidence is sufficient to sustain a verdict in favor of plaintiff.

2. **Street Railways**: STREET INTERSECTIONS: RIGHTS OF DRIVER OF VEHICLE. At a street intersection the driver of a vehicle may attempt to cross a street railway track ahead of an approaching car, where he is justified in believing there will be sufficient time to do so, if the car is operated at its usual and ordinary rate of speed.

3. ——: ——: COLLISION: INSTRUCTIONS. In an action to recover from a street railway damages for negligently running into a vehicle at a street intersection, the case may be submitted in the double aspect of permitting the jury to find whether defendant failed to exercise ordinary care in controlling the speed of the car, or to find whether the motorman, after discovering the peril of the driver, failed to use ordinary care to avoid a collision, where those issues are raised by pleadings and contested by proofs.

4. **Witnesses**: REDIRECT EXAMINATION. Error cannot be predicated on rulings permitting answers to questions properly propounded to

plaintiff's witnesses on redirect examination to explain opinions expressed in answer to similar questions propounded to the same witnesses on cross-examination.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Smyth, Smith & Schall, contra.*

ROSE, J.

The action is one to recover damages in the sum of $10,000 for alleged negligence resulting in the death of Michael Fitzgerald. Defendant operates a street railway in Omaha, and with double tracks occupies a strip 15 feet wide in the center of Farnam street, a public thoroughfare running east and west with a paved roadway 42 feet in width. On the north track the cars run west, and on the south track they run east. Thirty-eighth avenue crosses Farnam street at right angles. Fitzgerald, seated in the county ambulance, May 27, 1911, drove a team of horses northward on the east side of Thirty-eighth avenue. After the horses had crossed the street railway tracks on Farnam street the ambulance was struck by a west-bound street car. Fitzgerald was thrown to the pavement and was fatally injured. His widow, as administratrix of his estate, is plaintiff. She pleaded that defendant ran the car at a negligent rate of speed, and failed to exercise ordinary care to avoid a collision after her husband's peril had been discovered. Defendant denied that it was guilty of the negligence charged, and pleaded contributory negligence on the part of the driver of the ambulance. The jury rendered a verdict in favor of plaintiff for $5,000, and from a judgment for that sum defendant has appealed.

Error in refusing to direct a verdict for defendant is the first assignment presented. It is asserted that the evidence is insufficient to show actionable negligence of the motorman. It is also urged that the accident was caused by the negligence of the driver of the ambulance. In this con-

nection it is insisted that the car was approaching Thirty-eighth avenue at a lawful rate of speed; that the horses turned to the right in the intersection, indicating a purpose on the part of the driver to go east on Farnam street without crossing the tracks, but that, instead of doing so, he drove northward in front of the approaching car when a collision was inevitable, though he could have seen and heard the car had he looked and listened; that the gong was sounded; that the car was under control; and that it was stopped at the point of impact. There is some proof tending to support the theory of defendant, but its conclusions are not unavoidable deductions from the evidence and the law. There were several eyewitnesses. The ambulance attracted attention. It was a heavy vehicle with a red cross on the sides of the cover. The motorman recognized it as the county ambulance. When it appeared in the intersection two automobiles and a wagon, which had approached from the west on the south side of Farnam street, were stopped to let it pass. The occupant of the wagon testified that the ambulance passed within about six feet of him; that the horses came into the intersection on a slow trot, without showing an inclination to turn east, and went straight north; that they did not stop as they passed over Farnam street; and that their gait at the time of the collision was the same as when they entered the intersection. Occupants of the automobiles testified to the facts as they observed them. The testimony of the witnesses mentioned and of others tends to prove the following facts: As Fitzgerald reached Farnam street he leaned forward and looked eastward, when the approaching car was 140 feet or more east of Thirty-eighth avenue, but could not see it because his view was obstructed by an east-bound car. The motorman watched the ambulance while his car ran 150 feet. The collision occurred in the intersection near the center line of Thirty-eighth avenue. Testimony tending to prove the facts thus narrated is believable. According to the testimony of the motorman he approached the crossing at a speed of 10 or 12 miles an hour, and he applied the brakes, reducing the rate to 8

or 9 miles an hour after he saw the ambulance, but released the brakes because, as he asserted, the horses veered to the east—a contradicted statement. These estimates of speed, however, are not necessarily conclusive. The horses were trotting when they came into the intersection, and there is proof that the gait was not changed until they had crossed the tracks while going north without deviation. In *Harris v. Lincoln Traction Co.*, 78 Neb. 681, Commissioner Duffie said: "It is common knowledge that horses in a trot move at the rate of about 7 miles to the hour or 10 feet to the second." Whatever may have been the speed of the horses driven by Fitzgerald, it may fairly be inferred from evidence in the present case that the car, after the motorman had seen them approaching the track at right angles, exceeded his estimated speeds, and that it ran more than three times as far as the horses trotted before it reached the place where the collision occurred. Triers of fact are not compelled, as a matter of law, to disregard such inferences or to accept as verity the estimates of the alleged wrongdoer. Besides, when the reciprocal rights and duties of the street car company and the driver of the ambulance at public crossings are considered, with their relative situations and their obvious movements, a speed of 10 or 12 miles an hour may be evidence tending to show negligence. The car was running up grade. The motorman ran at least 150 feet while watching the ambulance. With the car that distance from the crossing, and with the heads of the horses within perhaps 30 feet of the track on which the car was running, it cannot be said, as a matter of law, in view of all the circumstances of which there is proof, that defendant was not guilty of actionable negligence, or that the driver of the ambulance was chargeable with contributory negligence. As a matter of right, a motorman who at the distance of 150 feet sees a team on a trot, 30 feet from a crossing, approaching the track at right angles, cannot maintain his speed until a collision is inevitable. *McKennan v. Omaha & C. B. Street R. Co.*, ante, p. 281; *Kennedy v. Third Avenue R. Co.*, 52 N. Y. Supp. 551.

In *Stewart v. Omaha & C. B. Street R. Co.*, 88 Neb. 209, the following language was used: "Whatever the rule in some states may be with respect to the rights of pedestrians and street cars upon the streets of a city, the law in this state is settled that neither the street car nor the pedestrian has any priority or privileged right over the other; that an electric street railway company and an ordinary traveler upon the street are required to observe an equal degree of care to prevent accidents, and that neither has a right of way superior to that of the other."

In *Omaha Street R. Co. v. Mathiesen*, 73 Neb. 820, it was said: "If the driver of a vehicle who arrives at a street intersection and who sees an approaching car is justified in believing that there will be sufficient time for him to cross the track before the car, if run at its usual and ordinary rate of speed, will reach the point of crossing, he cannot be said as a matter of law to be guilty of negligence in attempting to cross, and the question is a question of fact for the jury, to be determined from all the evidence before it. What an ordinarily prudent and cautious person would do under like circumstances is peculiarly a question for the jury."

In the present case the issues of negligence and contributory negligence were questions for the jury. In *McGahey v. Citizens R. Co.*, 88 Neb. 218, the opinion reads: "The court therefore was justified in submitting the cause in a double aspect; that is to say, to permit the jury to find whether the defendant was negligent in failing to exercise reasonable care to control the speed of its car at the time of and shortly preceding the accident, or to find whether the motorman, after discovering the plaintiff's perilous situation, brought about possibly by his own negligence, failed to use ordinary care to avert the accident."

The first assignment of error is overruled.

Rulings in giving and in refusing instructions are criticised, but, if there has been no mistake in what has been said already in regard to the evidence and to the law applicable thereto, there is no prejudicial error in the charge or in the refusal to give requested instructions.

Defendant also complains of assigned error in permitting witnesses to answer the following questions:

"From what you observed from the position of the car, and of the position of the wagon as it approached to cross the west-bound track, did it, or did it not appear to you—how did it appear to you as to whether or not the driver would have time to cross before the car struck him?"

"And you say that at that time when he looked that he could not see the west-bound car because the east-bound car cut off his view; is that right?"

These questions were propounded to plaintiff's witnesses on redirect examination to explain opinions expressed in answer to similar questions propounded to the same witnesses on cross-examination. For this reason, objections to the questions quoted were properly overruled.

There is no prejudicial error in the record, and the judgment is

AFFIRMED.