## GEORGE H. LAHNERS v. STATE OF NEBRASKA.

### FILED MARCH 12, 1929. No. 26541.

*Grant G. Martin* and *Bartos, Bartos & Placek,* for plaintiff in error.

*C. A. Sorenson, Attorney General,* and *Homer L. Kyle, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON and DAY, JJ., and HASTINGS and REDICK, District Judges.

DAY, J.

The plaintiff in error, George H. Lahners, hereinafter referred to as the defendant, was prosecuted and convicted for violation of the statute relative to the making and uttering of a "no fund" check. The statute involved is section 1, ch. 31, Laws 1925, which is as follows:

"Any person who, with intent to defraud, shall make or draw, or utter, or deliver, any check, draft, or order for the payment of money, upon any bank or other depositary, knowing at the time of such making, drawing, uttering, or delivering, that the maker, or drawer, has not sufficient funds in, or credit with, such bank or other depositary for the payment of such check, draft or order, in full upon its presentation, shall, upon conviction, be punished."

The defendant made a check October 8, 1926, for the sum of $339.32, payable to the Community Produce Company. When this check was presented to the bank for payment October 14, 1926, payment was refused because the

defendant did not have sufficient funds in, or credit with, the bank to pay it.

The defendant contends in his assignments of error that it was error for the trial court to permit the county attorney, in his opening statement, to state to the jury that he would offer to prove, if permitted by the court, that some four or five months after this transaction the defendant gave a check for $5, and nine or ten months later he gave another for $142, which were refused payment by the bank. Defendant contends that these transactions were too remote to the one involved to be admissible solely for the purpose of throwing light on the intent of the defendant. We think the defendant's objection was good. So did the trial judge, because the record discloses that exhibits 21, 22, and 23, the checks in question, were not received in evidence by him and defendant's objections to their reception were sustained. The county attorney in his opening statement was entitled to outline his theory of the case. This he did simply and briefly with reference to these checks without personal comment. The court having sustained objections to their receipt in evidence, the jury were in effect told that these checks were not to be considered.

It was not necessary, therefore, that the trial judge give the instruction requested by the defendant, which in substance told the jury not to consider these checks. In this connection, we have also examined instruction No. 10, and the court in substance informed the jury that evidence had been received of the making, delivering and nonpayment of other checks, and that such evidence was permitted solely for the reason that it tended to throw light on the intent of the defendant to defraud when he made and uttered the check described in the information. This referred to the other checks received in evidence by the court. In this, the court followed the rule announced in *Hayward v. State*, 97 Neb. 9. The jury, undoubtedly, understood this instruction to refer to the checks offered and received, and not to apply to checks not received in evidence.

The defendant assigns as error the refusal of the trial judge to direct a verdict for the defendant for the reason that the evidence failed to disclose who had been defrauded. The evidence shows that the Community Produce Company is a partnership. The persons composing this partnership were defrauded by this "no fund" check. They delivered poultry to the defendant in return for said check. This is a super-technical objection which is answered by the evidence itself.

It is also contended that the court erred in receiving in evidence exhibit No. 5, being a notice of protest of the check, which is the basis of this prosecution, made at the request of the State Bank of Belvidere by its cashier, before himself as a notary, and, as such notary, protested by him at his own request as cashier of said bank. The cashier in this case had no interest in the check. There was no conflict of interest between his duty as cashier of the bank and his duty as notary public. Section 4764, Comp. St. 1922, provides only that the protest shall be made by a notary. There is no contention that the facts sought to be proved by said protest are not true. It was proved by other competent evidence and was not contradicted by any evidence adduced by defendant. Therefore, even if inadmissible, it is an error that could not be prejudicial to the rights of the defendant.

The last and most seriously urged assignment of error urged by the defendant is that the verdict is not sustained by sufficient evidence. In this connection he urges that the evidence does not show that he made and uttered the check in question with intent to defraud. That was the issue in this case and was practically the only issue. The evidence upon this question is conflicting. The defendant made and delivered the check involved October 8, 1926, for $339.32. There were nine other checks introduced in evidence, given within four days of it, the sum total of which checks was $1,397.66. It is true that on October 9, 1926, he deposited $2,450. He complains because the check was not presented for payment until the sixth day

after issuance. But there was at no time sufficient money deposited to take care of all the checks he had issued. He knew his account was in bad shape, because he testified that on October 5 the cashier of the bank called him in and said to him: "We have a total amount up to $1,300. If you can't get the money and if they don't send the money up here to you we will have to protest the checks and send them back." He borrowed the money to take up these checks from the Bruning State Bank. At this time the State Bank of Belvidere did not extend him credit and neither did Suiker. This is significant, we think, since he claimed that he was working for Suiker in the buying of poultry and that Suiker had agreed to finance him. He testified that Suiker had made arrangements with the bank for credit, but Suiker and the cashier of the Belvidere bank testified that no such arrangement was made. Suiker also testified that he bought poultry from defendant after he had loaded a car and that the money he paid him was an advance on the purchase price. This therefore made an issue of fact upon which there was conflicting evidence as to whether in giving the check the defendant did so with intent to defraud. It appears the jury believed the cashier of the bank and Suiker instead of defendant. With reference to the element of intent and knowledge in this offense the legislature provided:

"In any prosecution under this act as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee because of lack of funds or credit, shall be presumptive evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary; provided such maker or drawer shall not have paid the payee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check, draft or order shall have been protested, the notice of protest thereof shall be admissible as proof of such presentation for payment, nonpayment and protest; and if such notice of protest or the

drawee's notice of dishonor thereof shall state that payment of such check, draft or order was refused because of lack of funds or credit of the maker or drawer, then such notice of protest or notice of dishonor shall be presumptive evidence that there was a lack of funds in, or credit with, such bank or other depositary, for the payment of such check, draft or order.

"The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary for the payment of such check, draft or order." Laws 1925, ch. 31, secs. 2 and 3.

It will be noticed that the offense is purely statutory and has no relation to the common law. It is a statute that in aid of the police power and upon the grounds of necessity might have eliminated intent and knowledge as an essential element. *State v. Striggles,* 202 Ia. 1318. The legislature has provided that the doing of the act in this case shall be presumptive evidence of intent and knowledge. The act denounced as a crime in this statute is *malum prohibitum,* and as such it is within the power of the legislature to lessen the degree of proof necessary relative to elements of the crime which might have been eliminated altogether as an essential element of the offense. The presumption provided by the statute is not conclusive and is rebuttable. It does not shift the burden of proof to the defendant. The presumption of innocence is still a matter of evidence to which the defendant is entitled, but along with it the jury are entitled to consider the presumption provided by this statute as to knowledge and intent.

The jury in this case, on the question of intent and knowledge, had the check upon which payment had been refused for lack of funds. They had nine other checks, unpaid, given at about the same time, aggregating $1,397.66. They knew that on the day his bank balance was $35.50, and that he deposited $2,450 the next day, which was insufficient by about $1,400 to pay his outstanding checks; that three days before he borrowed $1,500 to take up some outstanding checks; and that a week later

he filed a petition in bankruptcy to relieve himself of civil liability as to these checks. In addition, they had the conflicting testimony as to his arrangement for credit at the bank to take care of his checks. This is abundant evidence to sustain the verdict of the jury.

Finally, the defendant contends that the sentence is excessively severe. The amount involved in the check is considerable. The penalty imposed, one year in the penitentiary, is not nearly the maximum, of seven years. Of course, the court might have sentenced the defendant to pay a fine of $100 to $5,000, but after a careful perusal of the record we are of the opinion that the defendant had a fair and impartial trial; that his defense was properly submitted to the jury; and they found him guilty. The sentence imposed by the trial court is abundantly justified by the record, and this court will not, in this particular, substitute its judgment therefor.

AFFIRMED.