GLENN O. HAINES V. STATE OF NEBRASKA.

281 N. W. 860

FILED OCTOBER 28, 1938. No. 30360.

*B. J. Cunningham* and *W. P. Lauritsen,* for plaintiff in error.

*Richard C. Hunter, Attorney General, Harry S. Grimminger* and *Lloyd W. Kelly, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

Plaintiff in error, hereinafter designated as defendant, was proceeded against under section 28-1212, Comp. St. 1929, governing the issuance of an insufficient-funds check. The information is regular in form. The defendant was convicted of the offense by a jury in the district court for Hall county in September, 1937. Motion for a new trial was overruled. Defendant brings this proceeding in error.

The evidence establishes that defendant, a man 53 years of age, engaged in the live stock business since he was 19 years old, purchased horses for what was known as the

Iowa Horse Sales Company; that he had, previous to the time of giving the check in question, purchased horses, by check, from the Grand Island Live Stock Commission Company, a corporation engaged in handling and selling live stock on commission, and was known to the officers of the company, especially to the secretary thereof, who handled the office business. On June 6, 1934, defendant purchased from the commission company 33 head of horses, which were settled for that day by a check, designated in the record as exhibit 1, drawn on the Monmouth Trust & Savings Bank, Monmouth, Illinois, dated June 6, 1934, payable to the order of the Grand Island Live Stock Commission Company, in the amount of $1,717 for 33 horses, signed by Glenn O. Haines, and bearing the statement "not sufficient funds." The horses were loaded the same evening and consigned to Galesburg, Illinois.

The evidence further establishes that defendant was in the live stock business as a partner with one Woods and Faye Houtchens of Monmouth, Illinois; that the account of the Iowa Horse Sales Company carried in the Monmouth Trust & Savings Bank was subject to check by either Mr. Houtchens or the defendant. The agreement between the partners was to the effect that Woods would furnish the money, Houtchens would sell the horses, and the defendant would do the buying, and when the defendant would purchase horses he would then wire Houtchens or Woods, and the money would be deposited to meet the check given by defendant. Some 40 to 50 car-loads of horses had been purchased in this manner. The defendant had previously given checks to the Grand Island Live Stock Commission Company, the complainant, which were paid. The employees of the bank at Monmouth, who testified, did not know the defendant, and, to their knowledge, had not seen him, but had honored checks bearing his signature. Apparently, defendant had handled none of the banking affairs of the partnership. The horses in question were sold by defendant, nine head for $603.95, which amount was given by the defendant to Houtchens. This sale was made on June 9, 1934, or

three days after the check was given. On June 16, 1934, three head of horses were sold for $206, and the money was turned over to Houtchens, who indorsed the check and paid the amount to the complainant. On June 23, 1934, four head of horses were sold for $207.50, which was turned over by defendant to Houtchens, who did not deposit the money, and none of it was sent to the complainant. One horse died. Two head of horses were sold by defendant for $100, and he remitted this amount to the complainant.

Defendant was directed by a letter written by John Torpey, president and general manager of the complainant, dated August 22, 1934, and addressed to defendant in care of the Iowa Horse Sales Company at Monmouth, that if he was unable to take care of the balance due on the horses, he should load and ship them to Janesville, Wisconsin, where a sale was to be held September 1, and that one Clyde Hoops would be there to take care of the horses and see that they were sold. The defendant did ship 14 head of horses to Janesville. From the sale of these horses defendant had given Houtchens $811.45, which Houtchens failed to send to the complainant. The defendant obtained personally $25 for expense money and an additional $10 for his expenses to Decatur, Illinois, and did not receive any other sum personally.

Defendant contends that the evidence is insufficient to submit the case to the jury, and moved for a directed verdict at the close of the state's evidence, and again at the close of all the evidence, both of which motions were overruled by the trial court, and the cause submitted. In this connection the defendant contends that the essential element of the offense, which must be proved by the state beyond a reasonable doubt, is that the defendant made and delivered the check with intent to defraud the complainant,—in this case the Grand Island Live Stock Commission Company.

Section 28-1212, Comp. St. 1929, in part provides: "Any person who, with intent to defraud, shall make or draw, or utter, or deliver, any check, draft, or order for the payment of money, upon any bank or other depository, knowing at

the time of such making, drawing, uttering or delivering, that the maker, or drawer has not sufficient funds in, or credit with, such bank or other depository for the payment of such check, draft or order, in full upon its presentation, shall upon conviction, be punished," etc.

Section 28-1213, Comp. St. 1929, relates to rules of evidence and presumptions that are pertinent to the offense, as stated in the preceding section, and reads in part: "In any prosecution under this act as against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee because of lack of funds or credit, shall be presumptive evidence of intent to defraud and of knowledge of insufficient funds in, or credit with such bank," etc.

Defendant contends that the bare presumption arising from this statute is the sole evidence upon which the state must rely in establishing the animus of the alleged crime. Defendant further insists that, in view of the evidence that he acted in good faith, following the instructions of the complainant, saw to it that as much money as he was able to obtain was returned from the sale of the horses, and, in fact, cooperated with the complainant in every way possible and did not receive any of the benefits of the transaction, this evidence overcame the presumption of intent, established lack of intent, and placed the burden on the state to prove such intent beyond a reasonable doubt; that the state presented no rebuttal evidence.

The leading case in Nebraska on this subject, and cited by the state and by the defendant, is *Lahners v. State,* 118 Neb. 184, 223 N. W. 951. In the body of the opinion, the writer, speaking of the insufficient-funds check statute, said (p. 188) : "The legislature has provided that the doing of the act in this case shall be presumptive evidence of intent and knowledge. The act denounced as a crime in this statute is *malum prohibitum,* and as such it is within the power of the legislature to lessen the degree of proof necessary relative to elements of the crime which might have been eliminated altogether as an essential element of the

offense. The presumption provided by the statute is not conclusive and is rebuttable. It does not shift the burden of proof to the defendant. The presumption of innocence is still a matter of evidence to which the defendant is en-- titled, but along with it the jury are entitled to consider the presumption provided by this statute as to knowledge and intent."

When the defendant made and signed this check for the payment of the horses, such action on his part amounted to a representation that the check would be paid on its presentation, and that he had sufficient funds in the bank with which to pay the check on its presentation, or had arranged with the bank for credit. The evidence does not disclose that the commission company had in any way known of the agreement between Mr. Houtchens, Mr. Woods and defendant, or that a partnership existed among these three men, until subsequent to the time that the check was returned on account of insufficient funds.

The evidence further discloses that defendant made no arrangement with the bank for credit; that is, that he had no understanding with the bank for the payment of such check or draft. He knew, or must have known, that he had insufficient funds in the bank with which to pay the check, for the reason that on previous occasions he had wired his partners to have the money in the bank to meet the checks that he was giving. He did not follow that course this time. He did not inform the payee of the check of his partnership arrangement. Complainant believed, and had a right to believe, that it was dealing solely with the defendant, and it looked to him for payment of this check. There is also evidence that on the 23d day of June, 17 days after the check was issued and at least seven days after defendant had notice that the check was not paid, the sum of $207.50, money collected from the sale of horses, was placed in the hands of defendant's partner Houtchens, which is unaccounted for by him, in so far as the complainant is concerned. The alleged partners did not testify; neither did defendant recover any amount from the alleged partners

for the benefit of the complainant. More than three years had elapsed from the giving of the check to the time of trial. The complainant has been deprived of property and money by virtue of the transaction.

As stated in *Lahners v. State, supra,* the jury are entitled to consider the presumption provided in section 28-1213, Comp. St. 1929, as to knowledge and intent; and in the case of *White v. State, ante,* p. 154, 280 N. W. 433, it was held: "Intent to defraud may be proved by the circumstances surrounding the transaction." In the instant case the jury considered the presumption, as provided in said section 28-1213, as to knowledge and intent, the circumstances shown by the evidence, and also the pertinent fact that defendant, on his own admission, had not arranged for credit with the bank to pay his check. The evidence was sufficient to permit the jury to pass upon the question of intent to defraud.

In *Williams v. State,* 115 Neb. 277, 212 N. W. 606, we held: "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." This holding was followed in *Matters v. State,* 120 Neb. 404, 232 N. W. 781; *O'Connor v. State,* 123 Neb. 471, 243 N. W. 650; *Buckley v. State,* 131 Neb. 752, 269 N. W. 892.

"Where there is competent evidence supporting a finding of such intent, the verdict of the jury will not be disturbed because there is some testimony tending to indicate there was no such fraudulent intent." *Beach v. State,* 28 Okla. Cr. 348, 230 Pac. 758.

Section 28-1212, Comp. St. 1929, does not contemplate restitution and is void of language that would even indicate any favorable subsequent action on the part of the maker of the note to correct his credit, or to disclose an understanding not previously made known to the payee. In *Beach v. State, supra,* it was also held: "The crime of obtaining money by means of the bogus check was completed at the time the check was uttered and passed, and the fact that

the defendant subsequently gave the prosecuting witness security for the debt owing him, by reason of this transaction, does not affect the question of his guilt."

In most of the cases where the intent to defraud has been decided in favor of the accused, the evidence has shown that he had an understanding with the payee, or the circumstances were such that he had established credit with the bank. In the instant case, no such arrangement was made or understanding had with the payee by the accused. To follow the line of reasoning adopted by the defendant, of his having acted in good faith, or that he had difficulty with his partners, but, upon discovering the fact that they would not assist him in paying the obligation, he tried to assist the payee in every way possible by selling the payee's live stock, to return some of the money, would not only violate the conception of this statute but would lead to innumerable complications in the enforcement of the law.

Defendant further contends that the trial court erred in failing to admit defendant's exhibit 16, consisting of several checks constituting the account of the Iowa Horse Sales Company in the Monmouth Trust & Savings Bank from the time the account was opened October 19, 1933, to June 6, 1934, when exhibit 1 was returned for insufficient funds. The state sought, on cross-examination of defendant, to elicit from him an admission that on previous occasions he had given a check without having sufficient funds, presumably in the state of Montana, when purchasing horses. This the defendant denied, and on redirect examination he offered exhibit 16, which was refused by the trial court. No prejudice resulted to defendant from the court's refusal to admit this exhibit in evidence. In any event, exhibit 16 would not prove or disprove intent to defraud, in so far as exhibit 1, the check in question, is concerned, and, furthermore, exhibit 16 would not be admissible unless it were shown by the evidence that the defendant had followed the usual course of business in dealing with his partners, as herein stated.

Defendant contends that the court erred in excluding

certain testimony of one Charlie Jones, who worked for defendant, who accompanied him to Grand Island at one time, and who, on occasions, had heard Houtchens tell the defendant that Woods would furnish all the money necessary to purchase horses. Mr. Jones did not testify to any facts which showed that defendant had any arrangement for credit with the bank, or to any facts which would bind the complainant, and such evidence was properly excluded.

Section 28-1212, Comp. St. 1929, in fixing the penalty, where the check so issued amounts to a sum greater than $35, provides that a person so convicted shall be fined not less than $100, nor more than $5,000, or be imprisoned in the penitentiary for not exceeding seven years, or both, at the discretion of the court.

Under the circumstances and the evidence in this case, we believe that section 29-2308, Comp. St. 1929, should be invoked on behalf of the defendant, and that the sentence should be modified to the extent that defendant be obligated to pay a fine of $100 and costs of this prosecution, and that the one-year sentence in the penitentiary of the state of Nebraska given by the trial court should be and it is hereby set aside.

With such modification of the sentence, the verdict and judgment of the trial court are affirmed.

AFFIRMED: SENTENCE REDUCED.