STATE OF NEBRASKA, APPELLEE, V. RICHARD HRUZA, APPELLANT.
394 N.W.2d 643

Filed October 10, 1986. No. 86-007.

Patrick W. Meyer of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Following a bench trial in the county court, defendant, Richard Hruza, was adjudged guilty of issuing an insufficient-fund check in violation of Neb. Rev. Stat. § 28-611(3) (Cum. Supp. 1984). He was thereafter sentenced to 15 days in jail and ordered to make restitution in the sum of $2,225.09, the amount of the check, and to pay costs. The district court affirmed the conviction and sentence. On appeal to this court Hruza assigns as errors the district court's (1) failure to find that intent is an element of the crime charged, (2) finding the evidence sufficient to sustain the conviction, and (3) failure to determine that the county court erred in its sentencing procedure. We reverse and remand for a new trial.

Hruza was a dairy and grain farmer and held a checking account with the State Bank of Dannebrog, which he used for both personal and business purposes. On August 1, 1984, he

drew a check on that account in the aforesaid amount payable to the order of H & W Trucking in payment for the delivery of soybean meal used in Hruza's farming operations. The bank twice refused to pay the check because of insufficient funds.

On the first occasion, the operator of H & W, Herbert Mowrey, contacted the bank and formed the belief the check would be paid by insurance proceeds Hruza was to receive for hail damage to his crops.

Hruza argues the evidence shows he lacked the requisite intent to defraud on three grounds: (1) that he had an understanding with the Dannebrog bank that it would cover his checks; (2) that he had a line of credit with another bank to cover checks drawn on the Dannebrog bank; and (3) that he had credit due by virtue of insurance coverage the Dannebrog bank had obtained for hail damage to his crops.

In connection with the first ground, Hruza claims he had an agreement with the president of the Dannebrog bank, James Sindorn, that the bank would cover any checks he had written. Hruza testified that at the first of each year he would arrange financing for his business with the president and another officer of the bank. At such a meeting it was concluded that if Hruza became overdrawn, the bank would cover the checks until Hruza received the bimonthly payments from his dairy business or until other arrangements could be made. However, Hruza also testified that he would not write checks for business expenses without first contacting the Dannebrog bank for permission. He also testified he would often ask those payees not to cash the checks immediately but to hold them until he could make deposits into his account. In addition, when checks were returned because of insufficient funds in his account, Hruza would usually resolve the problem with the payee directly and not through the Dannebrog bank.

Sindorn, on the other hand, testified there was an understanding that if funds were received the day following the bank's receipt of the check, the bank would allow payment. He admitted, however, that there were some occasions when checks would be held for more than 1 day.

Sindorn further testified that although his bank may have been more lenient in prior times, Hruza was aware that 1984

was a financially unstable year. Sindorn had told Hruza "more than once" not to write checks when he did not have sufficient funds. Furthermore, according to Sindorn, the insufficient-fund checks his bank honored were not for large amounts and were for necessities only.

The evidence also established that during the period of May through September 1984, Hruza received statements from the Dannebrog bank which reflected the disposition of each of Hruza's numerous insufficient-fund checks.

The relevance of the evidence concerning the second ground, that Hruza had a line of credit with another bank, is not at all clear. It is generally to the effect that in early 1984 Hruza obtained a $150,000 loan from Norwest Bank in Omaha, which he used to reduce his debt to the Dannebrog bank, including $36,000 in overdrawn checks.

In connection with his third ground, Hruza testified that the Dannebrog bank knew, because of the insurance coverage it had placed, that he was to receive proceeds for hail damage to his crops. It was also generally known, however, that the loss would not be adjusted until October. He and the bank ultimately received $18,000 in insurance proceeds. Sindorn testified that he was unaware of any agreement between the bank, Hruza, and Mowrey involving payment to H & W from the insurance proceeds.

In November, Mowrey sent a statement to Hruza informing him that if payment were not received within 5 days, legal action would be taken. Mowrey also testified he had sent other statements and had made telephone calls to Hruza concerning payment of the check. After Mowrey contacted the county attorney's office in November of 1984, that office, on November 14, 1984, sent Hruza a notice letter which provided that if he did not make restitution within 10 days, charges would be filed.

At some time subsequent to the receipt of the county attorney's letter, Hruza attempted to make restitution; however, he was informed that charges had already been filed and could not be dismissed. Hruza also testified that he had not made any previous attempts to make payment, as he had filed bankruptcy on October 26, 1984. His former attorney advised that he not

make payment because it would be considered a preference by the bankruptcy court.

Section 28-611(3) provides:

> Whoever otherwise issues or passes a check or similar signed order for the payment of money, knowing that he or she has no account with the drawee at the time the check or order is issued, or, if he or she has such an account, knowing that he or she does not have sufficient funds in, or credit with, the drawee for the payment of such check or order in full upon its presentation, commits a Class II misdemeanor.

Hruza is correct in arguing that in order to violate § 28-611(3), an intent to defraud must exist at the time one issues an insufficient-fund check. *State v. Papillon, ante* p. 325, 389 N.W.2d 553 (1986).

In announcing its decision the county court stated that one who issues a check has a responsibility under the foregoing statute to know that the check "will be covered and know positively, not hope but know." Such, however, is not the case. It is not the existence or lack of existence of funds or credit at the time the check is written which controls; rather, it is the check drawer's knowledge that he or she lacks sufficient funds or credit to pay the check in full upon its presentment which determines whether the requisite intent to defraud existed when the check was issued. The county court's misstatement of the rule establishes it reached its judgment in the mistaken belief that intent was not an element of the crime charged.

It is true that § 28-611(4) provides in relevant part:

> In any prosecution where the person issuing the check has an account with the drawee, he or she shall be presumed to have known that he or she did not have sufficient funds in, or credit with, the drawee for the payment of such check or order in full upon its presentation, if, within thirty days after issuance of the check or order, he or she has been notified that the drawee refused payment for lack of funds and he or she has failed within ten days after such notice to make the check good or in the absence of such notice, he or she shall not have made the check good within ten days after notice was sent

842

> to him or her by the county attorney or his or her deputy, by United States mail addressed to such person at his or her last-known address, that such check or order has been returned to the depositor.

The "presumption" that the drawer of an insufficient-fund check who, after notice, does not make it good knew of the insufficiency when issuing the check is, however, only a permissible inference of fact. See *Haines v. State*, 135 Neb. 433, 281 N.W. 860 (1938), which held that a statute providing that the drawing of a check which was dishonored by the drawee bank " 'shall be presumptive evidence of intent to defraud and of knowledge of insufficient funds in, or credit with such bank' " entitled the jury to consider the effect of the presumption. *Id.* at 437, 281 N.W. at 863. Similarly, in *State v. Dwyer*, 57 Haw. 526, 560 P.2d 110 (1977), the Hawaii Supreme Court construed a provision that the failure to make good a negotiable instrument after notice of its dishonor constitutes "prima facie" evidence that the drawer knew when issuing the instrument that it would not be honored. The court held that the statutory language creates only a permissible inference of fact and that it is for the trier of fact to determine whether reasonable doubt of guilt exists.

If the presumption of § 28-611(4) were to be treated as anything more than a permissible inference of fact, the statute would be unconstitutional. The U.S. Supreme Court has held that the due process clause of the 14th amendment to the U.S. Constitution prohibits a state from using an evidentiary presumption which relieves the state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985). However, a presumption which permits the fact finder to find the inferred fact beyond a reasonable doubt, and concerning which it can at least be said with reasonable assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend, affords due process. *Barnes v. United States*, 412 U.S. 837, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973); *Leary v. United States*, 395 U.S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969). See, also, *Mantell v. Jones*, 150 Neb. 785, 36 N.W.2d 115 (1949).

Consequently, the inference permitted by § 28-611(4) must be appraised under all of the factual circumstances. See *State v. Dwyer, supra.*

This, then, brings us to the second assignment of error, which concerns the sufficiency of the evidence to support the conviction had the county court considered intent to be an element of the crime.

There is evidence which would support a conclusion that Hruza had a reasonable belief he had an arrangement with the bank which would provide credit for paying the check and, therefore, did not possess the requisite intent to write an insufficient-fund check. The bank had paid some of Hruza's checks, it knew he had an interest in some forthcoming insurance proceeds, and also Hruza had received legal advice not to make the check good. On the other hand, there is also evidence which would support a conclusion that Hruza did not have a reasonable belief he had a credit arrangement with the bank and, therefore, possessed the requisite intent to write an insufficient-fund check irrespective of the legal advice he was given. According to Sindorn, Hruza had been told not to write checks when he did not have funds in his account, and he had received a number of statements from the bank telling him the check had not been paid.

The applicable rule is that in determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and its finding of guilt must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Ellis, ante* p. 779, 393 N.W.2d 719 (1986); *State v. West, ante* p. 241, 388 N.W.2d 823 (1986). Thus, the record would support either a finding of guilty or of not guilty. The difficulty is that it cannot be determined how the county court would have evaluated the evidence had it considered intent to be an element of the crime.

The district court therefore erred in finding that no error of law appears from the record. Accordingly, the cause is remanded to the district court with the direction that it remand

the cause to the county court for a new trial.

The foregoing determination makes it unnecessary that we consider Hruza's remaining assignment of error.

REVERSED AND REMANDED
FOR A NEW TRIAL.

BOSLAUGH and HASTINGS, JJ., concur in the result.