STATE OF NEBRASKA, APPELLEE, V. PATRICK WALKER, APPELLANT.
408 N.W.2d 294

Filed June 26, 1987.   No. 86-816.

Thomas M. Kenney, Douglas County Public Defender, and Cathy K. Bashner, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The defendant appeals his convictions in the district court for Douglas County for assault in the first degree and use of a firearm to commit a felony.

Defendant contends that the evidence was insufficient as a matter of law to find defendant guilty of those charges. Defendant also contends that the court committed reversible error by overruling defendant's objection to an ophthalmologist's opinion testimony as to whether the victim in this case could have accidentally shot himself. We affirm.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to the jury. A

verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. *State v. Hruza*, 223 Neb. 837, 394 N.W.2d 643 (1986); *State v. Schott*, 222 Neb. 456, 384 N.W.2d 620 (1986).

The evidence in this case is, as is true with most cases, conflicting, and almost every witness was impeached on some detail of the incident. The State, however, produced evidence from which a jury could properly find the following facts as true. The victim, Brian Purdue, and three other men left the Shangrila bar in Council Bluffs, Iowa, at approximately 1:45 a.m. on Sunday, February 9, 1986. They all got into Larry West's pickup truck and headed into Omaha. At about 18th and Leavenworth they saw a friend some of them knew from high school. West pulled into a gravel parking lot, so they could talk to this friend. Purdue and Timothy Deal got out of the truck. Purdue was walking about 20 yards in front of Deal when a white car pulled out of an alley and blocked the sidewalk. The driver of the car, later identified to be the defendant, began to honk his horn. Remarks were exchanged between Deal and defendant and a shoving match ensued. Defendant said that he was going to take care of Deal, and then reached into the car and under the front seat. Purdue went to open the car door, which was locked. Purdue believed that defendant was going to get a gun and shoot Deal, so he broke defendant's passenger window with his elbow.

Defendant left in his car, so Purdue and Deal went back to their truck. The pickup and the car both went down Leavenworth, with the pickup slightly ahead of defendant's car. Both vehicles were traveling very rapidly, and an accident resulted. Defendant rammed into the back of the pickup, which caused the pickup to slide into a light pole.

Purdue got out of the truck to look for help for his friends, who were still in a daze. He went back to the gravel parking lot in hope of finding his high school friend again, but he did not find her. He then walked down the street to a teen club, where he asked to use a telephone, but was not allowed in because he did not have money for the cover charge.

Purdue began walking back to the pickup when he noticed

defendant's car come around the block and pull up close to the curb. Defendant asked Purdue if he was the one who had broken out his window. Purdue said that he had not and continued to walk down the street. Purdue began to run, and defendant chased him in his car. Purdue slipped on the ice and fell. As he got up and turned around to run the other way, defendant took a gun and shot Purdue twice. The first shot spread pellets in his arm and back; the second shot struck him in the face as he turned around to see from where the shots were coming. As defendant drove away, Purdue was able to flag down a car, which took him to a hospital in Council Bluffs.

Defendant, although he quibbles over details, does agree that he got into an argument with some of the four men, and into an accident with the four men's pickup truck. Defendant states, however, that after the accident someone got out of the truck with what looked like a shotgun, so defendant left. He continued to drive around the area, and when he stopped at a stop sign, he heard a loud explosion-type noise. He then discovered that his window had been broken. A man was standing next to his car with a shotgun, so defendant drove away as quickly as possible. This, defendant asserts, was the only involvement he had with a shotgun that evening.

From this, defendant argues that Purdue, when he slipped and fell, must have accidentally discharged the shotgun he was carrying. Purdue testified, however, that he was shot twice, and Officer Bell, who came to investigate the accident, said that he heard two gunshots coming from the area where Purdue was shot.

The only direct evidence of the shooting itself was provided by the victim. The alleged perpetrator of the shooting denies having shot the victim. The jury heard the witnesses, observed their demeanor, evaluated explanations, weighed the evidence, and determined that the defendant committed the crime. That conclusion is supported by sufficient evidence and therefore cannot be overturned by this court.

Defendant also argues that the court committed reversible error by overruling defendant's objection to the ophthalmologist's testimony as to whether the shot could have been accidentally self-inflicted. We do not agree.

Dr. Madson, the ophthalmologist who performed three surgical procedures on defendant's injured eye, testified that he treats generally two or three cases a year of eye injuries from shotguns. He also testified that since he is in a referral clinic he sees more gunshot wounds than an average ophthalmologist. Defense counsel, on cross-examination, then asked him the following:

> Q. I imagine on occasion some of these wounds are self-inflicted accidently too, isn't that true?
>
> A. I am not sure that I have seen a self-inflicted gunshot wound that would appear like this. The distance from the spread on the shotgun would have to be a ways away. In other words, I think it would be physically impossible to hold a shotgun close enough, you know, to get a spread of pellets like we normally see.

Then, on redirect examination, the prosecutor asked: "The injuries that you saw on Mr. Purdue, in your opinion from the basic outline of a shot, could that have been self-inflicted?" Defense counsel objected, and the court overruled his objection. Defense counsel then asked to voir dire the witness, which the court would not allow. Dr. Madson then answered the question: "I dealt with quite a few self-inflicted gunshot wounds to the head and . . . [a]nd on this basis, the spread of the pellets, I do not feel is consistent with the self-inflicted injury in Brian's case."

Defendant objects to the admission of Dr. Madson's opinion which was elicited by the prosecutor on redirect examination. Defendant objects because Dr. Madson was neither a ballistics expert nor a forensic pathologist; he is an ophthalmologist.

Defendant, however, cannot now complain that this was error, when he opened the door to the prosecutor's question. That question was propounded to explain the opinion Dr. Madson had expressed on cross-examination about the possibility that some gunshot wounds Dr. Madson treated were accidentally self-inflicted. As we stated in *Fitzgerald v. Omaha & C. B. Street R. Co.*, 97 Neb. 856, 151 N.W. 931 (1915): "Error cannot be predicated on rulings permitting answers to questions properly propounded to plaintiff's witnesses on redirect examination to explain opinions expressed in answer to similar

questions propounded to the same witnesses on cross-examination." (Syllabus of the court.) And, as we set forth in *State v. Fellman*, 187 Neb. 767, 771, 193 N.W.2d 775, 777 (1972): "The extent to which a witness on redirect examination may explain testimony elicited on cross-examination lies primarily in the discretion of the court." Because the doctor's answer to defense counsel's question was ambiguous, the court did not abuse its discretion by allowing the prosecutor to ask a question on redirect examination to explain that answer. See, also, *Chicago, R. I. & P. R. Co. v. Griffith*, 44 Neb. 690, 62 N.W. 868 (1895).

The judgment of the district court was correct and is affirmed.

AFFIRMED.