■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHANIEL GORDON, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered September 29, 1978, convicting him of grand larceny in the third degree and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. Although defendant's guilt was proved beyond a reasonable doubt, three trial errors require that his conviction be reversed and that he be afforded a new trial. Defendant was charged with grand larceny in the third degree, petit larceny, and criminal possession of stolen property in the third degree. The evidence adduced at trial established that while defendant and one Perkins were standing on a subway platform within inches and to either side of a "decoy" transit police officer, Perkins removed a protruding checkbook cover containing a dollar

---

1. *People v Donovan,* 13 NY2d 148.

2. *People v Arthur,* 22 NY2d 325.

bill and three "play money" bills from a rear pants pocket of the decoy. The issue for the jury was whether defendant, with intent to steal and possess the checkbook cover and its contents, had "solicit[ed], request[ed], command[ed], importun[ed] or intentionally aid[ed]" Perkins "to" remove them, thus rendering himself criminally liable for Perkins' conduct (see Penal Law, § 20.00; § 155.05, subd 1; § 155.30; § 165.40). The decoy officer, consistent with his portrayal of an elderly man vulnerable to having his pocket picked, had directed his gaze downward throughout most of the time period in question. Thus, the only relevant testimony he was able to give concerning defendant's conduct was that defendant had fled after Officer Brown, the "observing" officer, had seized Perkins. Officer Taylor, the "seal off" officer, whose primary duty was more to prevent the escape of anyone who might victimize the decoy officer than to keep the decoy under surveillance, testified that he saw defendant and Perkins, engaged in conversation, walk behind the decoy as the latter walked slowly to an escalator. When they were three to five feet to his rear, one of them, whose identity Officer Taylor could not recall, pointed at the decoy. Thereafter, Perkins, defendant and Officer Brown, in that order, rode behind the decoy down the escalator, while Officer Taylor took the stairs. At the foot of the escalator, defendant and Perkins, together, walked past the decoy and stood by a wall. They then followed the decoy when he went down a flight of stairs to the platform where the theft eventually occurred. Defendant and Perkins stood behind the decoy for about five minutes until a train pulled into the station. They then moved to either side of him. Officer Taylor next saw defendant running toward the stairway he had previously descended. Because defendant was running, Officer Taylor chased him and arrested him. He had not seen anyone take the checkbook cover from the decoy's pocket. Officer Brown, the "observing" officer, whose primary duty was to watch the decoy, gave the testimony that most served to inculpate defendant. On direct examination, he testified, *inter alia,* that while he stood behind defendant and Perkins on the escalator, Perkins "nudged" defendant with his elbow and pointed in the direction of the decoy's pocket, to which defendant responded by stating, "Wait a minute. Be cool." On cross-examination, it was elicited that Officer Brown had not indicated in any of his postarrest reports that any of these events had occurred. On redirect, over defendant's objection, which was subsequently reasserted in the form of a motion for a mistrial, Officer Brown was permitted to testify that before the Grand Jury, 12 days after defendant's arrest, he testified to the matters to which he had testified on direct, but which defendant had established had not been included in his postarrest reports. This was error. As the Court of Appeals has stated: "It is now firmly settled in this State that an impeached witness cannot be rehabilitated by his antecedent consistent statements unless the cross-examiner has created the inference of, or directly characterized the testimony as, a recent fabrication * * * In such instances only, prior consistent statements made at a time when there was no motive to falsify are admissible to repel the implication or charge" *(People v Davis,* 44 NY2d 269, 277). In *Davis,* the court held that although the defendant's cross-examination of the police officer had amounted to a charge of fabrication of trial testimony, it could not be rebutted by the introduction of his postarrest report, which contained statements consistent with his trial testimony, since the report was made after defendant's arrest and defendant's cross-examination was "readily interpretable" as a claim that the arrest was made as a part of a plan to convict defendant on false charges. Since the statements in the report were thus made at a time when there was a motive to falsify, they

were inadmissible. Here, assuming that the cross-examination by defendant is interpretable as a claim that Officer Brown fabricated his trial testimony out of a motive to enhance the People's ability to obtain defendant's conviction, Officer Brown's antecedent consistent statements, made at the Grand Jury after defendant's arrest, were also made at a time at which he would have possessed such a motive. Therefore, since Officer Brown's Grand Jury testimony was not given "prior to the time when the charged motive to falsify arose" (see *People v Davis, supra,* p 278), it was not admissible. Officer Brown's trial testimony was the most powerful proof of defendant's guilt and tended to establish facts as to which he alone was in a position to testify; permitting that testimony to be improperly bolstered on redirect by prior sworn testimony of the officer cannot be regarded as harmless error (see *People v Davis, supra,* p 278), particularly since the Grand Jury testimony was admitted without a limiting instruction. (See *People v Davis, supra; People v Campbell,* 59 AD2d 912.) Further error was committed when the Trial Judge made no inquiry into the apparent failure of some of the jurors to heed the mandatory admonition that they "not converse among themselves * * * upon any subject connected with the trial" (CPL 270.40). After both sides had rested, the court advised the jurors that they would be excused until the next day when they would hear summations and receive the court's charge. Thereafter, a juror said to the Trial Judge: "We would like to know where grand larceny starts and [petit] larceny ends." In response, the Judge advised the juror that he would be telling the jury that in his charge and asked whether the juror had "Anything else" to say. After he stated that he did not, the Judge excused the jury. After the jury was excused, defendant's motion for a mistrial on the ground that it appeared that there had been premature deliberations among the jurors was denied. In light of the juror's statements, the trial court's denial of defendant's motion without any inquiry into whether and to what extent the jurors had violated their duty not to discuss the case before it was submitted to them was error. This duty is an important one. It appears to derive not only from the statutory admonition, the salutary purposes of which are obvious, but also may, perhaps, be rooted in defendant's right under our State Constitution to have his guilt or innocence determined by a jury of 12 persons, all of whose deliberations are to be carried on as one body of 12. (See *People v Ryan,* 19 NY2d 100, 104-105.) Moreover, when that duty is breached before the defendant's summation, as may have occurred here, the possibility exists that some or all of the jurors will have formed conclusions about the case without their having been exposed to defendant's summation, "a basic element of the adversary factfinding process in a criminal trial." *(Herring v New York,* 422 US 853, 858.) Accordingly, before the trial resumed, the court should have made inquiry into the extent, if any, that the jury had engaged in premature discussions of the case, in violation of its duty. The People assert that the court's failure to make such inquiry is not reversible error absent defendant's showing that any premature discussions the jurors might have had, had prejudiced defendant. However, it is difficult to see how such a showing could have been made when there was no inquiry into the nature of such discussions, if any. Finally, we note that the Trial Judge abused his discretion in refusing to permit defendant to cross-examine Officer Taylor concerning whether marihuana was found on defendant's person after his arrest. Evidence of the presence of marihuana on defendant's person would have been probative of an explanation for defendant's flight other than consciousness of guilt of the crimes committed against the

decoy. (See *People v Yazum,* 13 NY2d 302.) Damiani, J. P., Gibbons, Margett and Martuscello, JJ., concur.