■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HERIBERTO GONZALES, Also Known as ALBERTO GONZALES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Bernstein, J.), rendered August 30, 1979, convicting him of manslaughter in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. Defendant was charged with the crimes of murder in the second degree (two counts), assault in the second degree (two counts), and criminal possession of a weapon in the second degree, stemming from the death of Rigoberto Negron by gunshot and bullet wounds received by Julio Negron (decedent's brother) during a melee on a street in Brooklyn. A mistrial was declared after the first trial when the jury declared that it was hopelessly deadlocked. This appeal is from the judgment convicting defendant, upon a jury verdict after retrial, of manslaughter in the first degree and criminal possession of a weapon in the second degree. The thrust of the People's case was that the motive for defendant's actions at the time was to avenge an attack upon him by the Negron brothers three nights before. The People also asserted that defendant, by taking a trip to Puerto Rico the morning after the fatal shooting, demonstrated consciousness of guilt and did so to avoid being apprehended. Both on retrial and on appeal defendant claimed that he acted in self-defense in that he fired at the Negron brothers only after they fired at him and that he had wrested a gun from Julio Negron. He also asserted that the Negron brothers had fired at him during their encounter three nights before. The People's sole witness to the fatal shooting was Luis Sanchez. He testified that on the evening of April 14, 1978, while a street fight was in progress outside a social club in which neither defendant nor the Negron brothers were involved, he saw defendant approach one of the brothers. After an interval of a few seconds he saw defendant take out a black gun and start "shooting crazy" approximately four times in the Negrons' direction before taking flight. He saw "Rigo" Negron (decedent) fall to the ground, Rigo's brother "Kiki" was wounded in the hand, and Sanchez himself was wounded in the left leg. Serious error was committed by the trial court in sustaining an objection by the prosecutor which precluded defendant from testifying on direct examination as to why he went to Puerto Rico the day after Rigo Negron was fatally wounded. Such refusal was especially devastating in view of the fact that (1) in his opening statement the prosecutor repeatedly emphasized defendant's "flight" to Puerto Rico, (2) in his summation the prosecutor pointedly referred to the defendant's going to Puerto Rico with his wife the day after the fatal shooting, and added, *inter alia:* "Because he did the firing, he did the shooting, he knew that he did something wrong, and he knew he wasn't going to come back" and (3) the trial court, after referring to the trial testimony of Detective Milano pertaining to his ascertaining from an investigation that defendant, after the incident, was no longer in New York, but was living in Puerto Rico, charged the jury, *inter alia:* "The rule is that evidence of

flight is admissible, and when unexplained is deemed indicative of a consciousness of guilt, and, hence, guilt itself." Evidence should be admitted which is probative of an explanation for an accused's flight other than consciousness of guilt of the crimes allegedly committed by him (see *People v Gordon,* 77 AD2d 662, 664). When the prosecution has offered evidence of flight of an accused as tending to show guilt, the accused may explain his reason for fleeing and is entitled to the benefit of any explanation of his flight consistent with his innocence (1 Wharton's Criminal Evidence [13th ed], § 214; cf. *People v Yazum,* 13 NY2d 302). We note at this time that the proof of defendant's guilt was not overwhelming. Concededly, the People did produce an eyewitness (Sanchez) whose testimony incriminated defendant. However, lending strong credence to defendant's version of the altercation, i.e., that he fired the lethal shots at the Negrons in self-defense only after they had fired at him, was other evidence adduced on his behalf that the Negrons had not only assaulted him with a stick three nights earlier but a short time after that assault had also fired two shots at him and his "wife". Moreover, evidence of blood was found, not in front of the social club where the fatal shooting of Rigoberto Negron allegedly took place, but rather in front of the adjacent building where defendant resided. Such fact supported defendant's statement as to the location of his previous encounter with the Negrons in which he was the person assaulted. Thus we cannot say at this juncture that the error was harmless beyond a reasonable doubt (*People v Shields,* 81 AD2d 870, 871; see *People v Crimmins,* 36 NY2d 230, 238-242). Therefore, a new trial is required. We find defendant's other contentions to be without merit. Titone, J. P., Gibbons and Rubin, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment, with the following memorandum. Defendant stands convicted, upon a second jury trial, of manslaughter in the first degree and criminal possession of a weapon in the second degree. At trial defendant claimed to have fired the shot, which killed Rigoberto Negron, in self-defense: "The only thing that I could see of him was his face, and I bent down, they had already beaten me up, and they had done a lot of things to me, and in a situation like that, you know it was either his life or my life, and my life is worth more. He was behind a car, you know, and I was lucky enough that I was able to fire that shot at him." After fleeing the scene without ascertaining the condition of his victims, defendant spent the night in a Bronx hotel and left the next morning for Puerto Rico, where he was ultimately arrested. When the defendant was asked why he went to Puerto Rico, the prosecutor objected and the objection was sustained without any protest by defense counsel. As part of their case the People produced eyewitness Luis Sanchez, who testified to having witnessed the defendant approach the Negron brothers, engage in a brief conversation, and produce a black handgun which he fired approximately four times in the Negrons' direction before fleeing. Defendant, on the other hand, testified that the Negrons had precipitated the encounter with him and that the gun which he had used to protect himself had been wrested from Julio "Kiki" Negron. Defendant admitted having loaned money to the Negron brothers on occasion, with a loan of some $800 still outstanding at the time of the incident. Although he earned only $80 to $90 per week from various menial jobs, defendant supplemented his income by selling marihuana and playing dice. Defendant, who testified that he had never held a gun before, managed to fire just one shot and hit the decedent. When asked to demonstrate to the jury the position from which he fired the fatal shot, defendant displayed a two-handed grip from a crouched position with the gun hand outstretched, hardly the position of a novice. In the face of this conflicting testimony, the jury acted within its province in rendering a verdict against defendant. Although the trial court had precluded defendant from attempting to explain the reasons for his flight to Puerto Rico,

it administered the following lengthy instruction on flight. "It is the contention of the People that after the commission of the alleged murder by the defendant, he ran away from the scene of the incident. The flight of a person accused of a crime is a circumstance which when considered with all the other facts of the case may justify an inference of the accused's guilt. The rule is that evidence of flight is admissible, and when unexplained is deemed indicative of a consciousness of guilt, and, hence, guilt itself. However, consciousness of guilt may not serve as a substitute for other proof, it operates only by lending strength to other and more tangible evidence. The mere leaving of the scene of a crime does not warrant the inference of guilt unless the unexplained circumstances justify an inference that the departure was made with the consciousness of guilt and for the purpose of avoiding apprehension. I caution you, therefore, that flight standing alone, raises no legal presumption and is of slight value. It is for you to decide two questions of fact from the evidence: one, did the defendant, Gonzalez [sic], in fact, flee; and, two, if so, was the alleged flight, under all the circumstances consistent with the conduct of an innocent or was it indicative of guilt. You as the sole and exclusive judges of all the facts must determine the answers to these questions based on all the evidence in this case." I do not agree with the majority that the trial court committed reversible error in sustaining an objection by the prosecutor which effectively precluded defendant from explaining, on direct examination, the reasons for his sudden departure to Puerto Rico the day after the fatal shooting of Rigoberto Negron. While defendant's explanation might have been relevant in connection with his state of mind after the incident, the effect of its omission was not so severe as to have deprived defendant of his right to a fair trial. In view of the limited impact of the defense counsel's solitary question, the answer to which was never offered outside the jury's presence, the defense's failure to further pursue the matter, the charge concerning the "slight value" to be accorded evidence of flight, and the overwhelming evidence of guilt, any error of omission which might have been committed by the Trial Judge was harmless beyond a reasonable doubt (see *People v Crimmins,* 36 NY2d 230). Moreover, the prosecutor's reference in the course of his summation to defendant's trip to Puerto Rico was within " 'the four corners of the evidence' " since defendant had admitted same at trial (*People v Ashwal,* 39 NY2d 105, 109). The interests of justice, as I perceive those interests, simply do not call for another retrial.