GERTRUDE T. EDNEY ET AL. V. JAMES E. BAUM ET AL.

FILED MARCH 5, 1895. No. 5205.

1. **Assignments of Error.** Errors in the admission or rejection of testimony cannot be considered unless by assignments of error the particular rulings complained of are specified.

2. **Review: AMOUNT OF VERDICT.** A verdict will not be set aside because of the inadequacy of the damages awarded, when on one issue, if found for the plaintiff, they would be inadequate, but when the verdict may have been based on other issues calling for a smaller recovery.

3. **Trial: MISCONDUCT OF JURY.** A verdict should be set aside when it is made to appear that jurors discussed among themselves the merits of the case, expressing opinions thereon, before final submission, and where an unauthorized communication took place between a juror and one of the attorneys while the jury was deliberating. Especially should such a verdict be set aside where the evidence establishes a high probability that there was misconduct in other particulars.

4. ———: ———. In this case it was not shown that anything prejudicial occurred in the communication between counsel and juror. But prejudice will in such cases usually be presumed. The fact that there existed the opportunity and inclination among jurors to communicate with those outside the jury-room may be sufficient to vitiate a verdict.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*W J. Lamb* and *R. Cunningham,* for plaintiffs in error,
cited, contending that there was such misconduct both on
the part of defendants below and of the jury as warranted
a reversal: *Ensign v. Harney,* 15 Neb., 330; *Knight v. Free-
port,* 13 Mass., 218; Thompson, Trials, sec. 2605; *Stam-
pofski v. Steffens,* 79 Ill., 303; *Ortman v. Union P. R. Co.,*
32 Kan., 419; *Winslow v. Morrill,* 68 Me., 362; *Brad-
bury, v. Cony,* 62 Me., 223; *Sanderson v. Nashua,* 44 N.
H., 492; *People v. Bonney,* 19 Cal., 426.

The verdict was too small, forced, and without support
in the evidence. (Thompson, Trials, sec. 2606; *St. Louis
Brewery Co. v. Bodeman,* 12 Mo. App., 573; *Ellsworth v.
Central R. Co.,* 34 N. J. Law, 93.)

*Pound & Burr, contra,* cited, contending that the facts
alleged did not constitute misconduct on the part of the
jury, counsel, or parties: *Clarke v. Town Council of South
Kingston,* 27 Atl. Rep. [R. I.], 336, and cases there cited;
*Walker v. Dailey,* 54 N. W. Rep. [Ia.], 344; *Paramore v.
Lindsey,* 63 Mo., 63; *State v. Duestoe,* 1 Bay [S. Car.],
380; *State v. Cucuel,* 31 N. J. Law, 249; *Borland v. Bar-
rett,* 76 Va., 128; *Wise v. Bosley,* 32 Ia., 34; *Gale v. New
York C. & H. R. R. Co.,* 53 How. Pr. [N. Y.], 385, 393.

In such cases the presumption is that the juror acted
properly, and there must be clear and convincing proof to
the contrary. (*People v. Williams,* 24 Cal., 31; *Goodright
v. McCausland,* 1 Yeates [Pa.], 372, 378.)

Nor is the testimony of third persons as to declarations
made by jurors admissible. (*Commonwealth v. Meserve,*
156 Mass., 61; *Allison v. People,* 45 Ill., 37; *Gale v. New
York C. & H. R. R. Co.,* 53 How. Pr. [N. Y.], 385;
*Smith v. Smith,* 50 N. H., 212.)

The finding of the trial court upon such questions will
not be disturbed. (*Everton v. Esgate,* 24 Neb., 235; *Camp-
bell v. Holland,* 22 Neb., 615; *Dill v. Lawrence,* 109 Ind.,
564; *Borland v. Barrett,* 76 Va., 129; *Stevens v. Stevens,*
127 Ind., 560.)

As to the amount, of the verdict: *St. Louis & S. E. R. Co. v. Myrtle*, 51 Ind., 566.

IRVINE, C.

This was an action brought by the plaintiffs in error against the defendants in error to recover damages because of certain alleged false representations made by the defendants to the plaintiffs, inducing the purchase by the plaintiffs of a number of lots in the city of Lincoln. There was a verdict for the plaintiffs for $500 after a protracted trial of the case. The plaintiffs prosecute error, arguing in their briefs only two points affecting the merits of the case.

The lots referred to formed a portion of the consideration for the conveyance by the plaintiffs to the defendants of a stock of hardware in Omaha. On the trial the defendants were permitted to offer testimony to the effect that the condition of the hardware was not as good as it had been represented by plaintiffs to be, and that it was of less value than it would have been if such representations had been true. The jury was expressly instructed that this evidence could not be considered as affecting the measure of damages, and could only be considered in determining the good faith of the parties to the transaction. Whether it was admissible for this purpose we cannot now determine, because the only assignment of error covering the subject is as follows: "That the court erred in allowing evidence to be introduced in the trial as to the condition and value of the stock of hardware. The admission of all the evidence as to its condition and value being in error, viz., the evidence introduced by defendants on said trial, and to which plaintiffs' counsel duly objected to and excepted at the time, as to the condition and value of said hardware stock, to-wit, the testimony of the witnesses David Baum, Daniel Baum, J. E. Baum, John Dennis, A. S. Carter, and H. J. McCarty as to the inventory and the condition and value of said stock." This assignment does not challenge attention to any par-

ticular ruling of the court and is too general for considera-
tion.

The second assignment argued in the briefs is that there
was error in the assessment of the amount of recovery, the
same being too small. There were 130 lots conveyed. One
of the representations charged was that these lots were of
the value of $200 each. This was coupled with averments
of facts which plaintiffs claimed justified them in relying
on this representation. If the jury had found that this
representation as to value was in fact made, and that a state
of affairs existed which took the case out of the general
rule in regard to representations of value and justified
plaintiffs in relying thereon, then it is more than doubtful
whether under the evidence a verdict for so small an
amount as $500 could be sustained. But the petition
charged twenty distinct false representations. Some of these
were not submitted to the jury, the court deeming them
evidently not actionable. Of those submitted to the con-
sideration of the jury there were some whose truth or fal-
sity might only slightly affect the value of the land. Be-
cause the jury found for the plaintiffs, it does not follow
that it found that they were entitled to recover because
of the specific representation as to value; and if the verdict
was based on other representations, the evidence was not
such as to demand necessarily a higher verdict than the one
rendered. After the verdict was rendered the parties, ex-
cept upon the two matters already discussed, seem to have
abandoned the prosecution of the case upon its merits, and
instead thereof there began a most unseemly trial by affi-
davit of the defendants, their counsel, the jury, and even
the trial court. Some of the matters charged in the motion
for a new trial are in implied contradiction of the record.
Many of them relate to matters occurring in the presence
of the trial judge, whose determination of which would not,
therefore, be ordinarily interfered with. Almost every
affidavit as to misconduct is met by flat contradiction. As

to these matters, therefore, we would not disturb the find-
ing of the district court in overruling the motion for a new
trial.     The perusal of the proof filed on most of the ques-
tions raised has not aided us in ascertaining the truth of
the matter.     The only conviction reached after reading it
is that of the total unreliability of human testimony when
adduced in the form of voluntary affidavits.     A few facts
are, however, established by uncontradicted evidence, and
we think require that the judgment be reversed.     They
were probably lost sight of by the trial judge in the throng
of repulsive and ill-founded charges which were crowded
upon his attention.

The arguments to the jury were concluded on the even-
ing of April 21st.     The jury was allowed to separate and
the case was committed to it on the morning of the 23d,
the 22d being a holiday, Arbor day.

Peter Luther, one of the jurors, swears that William
Dalstrom, another juror, during the first part of the trial
frequently stated in Luther's presence that the lots in con-
troversy were swampy and of no value, and that Mrs.
Edney had been cheated, but changed his mind before the
case was determined.     Two other jurors, A. C. Sharrick
and S. D. Eastman, testify to the same effect.     J. W. Es-
tabrook testifies that after the trial was over he met Dal-
strom, who declared to him that on Arbor day Dalstrom,
with several men, went to see the property in question and
inquired about the lots.     This affidavit as to declarations
by a juror after the verdict would of itself be of no im-
portance, but it is entitled to some little weight in connec-
tion with the rest of the testimony.     B. F. McCall, one of
the jurors, testifies that he met Dalstrom on Arbor day,
that Dalstrom was then intoxicated and told McCall that
he was going to see the lots.     George S. Overton testifies
that on Arbor day he saw two men looking at the lots and
they inquired of him in regard to the names of the streets
and numbers of lots, and as to the value of lots in the

neighborhood; that he had since seen Dalstrom and recognized him as one of the men he saw and talked to that day. By another affidavit Overton says that it may have been several days after Arbor day when this occurred, and that he swore to his former affidavit without accurately knowing its contents. George Scherer corroborates Estabrook as to Dalstrom's declarations. Dalstrom himself denies that he went to see the lots on Arbor day, and denies talking with Overton and Estabrook, but admits that he talked to Juror Gable on Arbor day about going to see the lots. He says he drank a few glasses of beer that day and may have indulged in idle talk with Gable and others. As to his condition on that day his own rather peculiar statement is that he " was not intoxicated and was only slightly under the influence of the beer he had drank." He practically admits having told McCall he was going to see the lots. H. W. Gable, another juror, says that during the trial Dalstrom stated that the lots were low and of no value, and that Mrs. Edney had been cheated badly; that on Arbor day Dalstrom was intoxicated and offered to hire a team at his own expense and show Gable that the lots were high and dry. He also testifies that Juror William Barr, during the early part of the trial, spoke frequently in favor of the defendant, and at one time said, " What is the use trying this case and fighting it so, a trade is a trade and ought to be, and let go at that." Barr testifies that he did not make any such statement, but that "sometimes the jurors in arguing with one another would become a little earnest, and perhaps unguarded, and say things which neither juror really meant, which is usual among jurors." If the only feature of this evidence was the alleged visit of Dalstrom to the lots we would hardly feel justified in setting aside the finding of the district court on that point, although we think from the affirmative evidence, from the proof as to Dalstrom's condition, and from his own admissions, that the weight of the evidence is that he took this

private view of the property.  But aside from this the affidavits clearly show that before the case was submitted to the jury, jurors discussed its merits among themselves and expressed opinions in regard to the rights of the parties. It is made the duty of the court to admonish the jurors, when permitted to separate during the trial, against such conduct, and it is presumed that the court did its duty in this respect.

The proof on another point is worthy of comment.  E. M. Wolfe states that during the deliberations of the jury he was in company with one of the attorneys for the defendants and while beneath the window of the room within which the jury was deliberating the window was opened. Two of the jurors stood in the window when affiant's companion raised his hands and said, "Throw it down to me and I will catch it—the verdict, I mean."  A juror said, "We will have the verdict in a few minutes."  The attorney referred to testifies that Juror Sharrick addressed, from the window, Wolfe and the affiant, saying, "We will be down in a few minutes."  Wolfe and affiant stopped and in imitation of a ball player affiant said, "I can catch it." This occurrence is suspicious, not because of the language used on this occasion, because the conduct of the attorney referred to seems at most to have been indiscreet, but because it evinces both a disposition and an opportunity on the part of the jurors to discourse with outsiders.   Prejudice will usually be presumed from such communications. (*Veneman v. McCurtain*, 33 Neb., 643.)

We think that the proof discloses such irregularities in the way of communications among the jurors and with others as to demand that the verdict be set aside, and while we are loath to encourage the practice of assailing the adverse party and jurors after an unfavorable verdict, we are the less reluctant in setting this verdict aside because of the fact that some five or six of the jurors have filed affidavits stating that their minds never assented to the verdict, but

that they were induced to acquiesce therein to avoid further confinement. The portions of the affidavits relating to this were struck out by the district court, and properly so, as being incompetent for the purpose of impeaching the verdict. But the fact that the affidavits were filed moves us to say that these jurors were evidently utterly regardless of their oaths. Each one violated his oath, either as a juryman or else in making the affidavit. While the verdict could not be set aside on this ground the fact that the case was tried by a jury embracing so many men of this character renders us, we repeat, the less reluctant in setting aside the verdict on other grounds. To those interested in the case it may be proper to suggest that in further proceedings it will be well to avoid all conduct calculated to arouse even a suspicion of evil.

Reversed and remanded.