THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RENARD SMITH, Appellant.

First Department, June 22, 1982

### APPEARANCES OF COUNSEL

*Monica Drinane* of counsel (*Judith Preble* with her on
the brief; *William E. Hellerstein,* attorney), for appellant.

*Brian O'Donoghue* of counsel (*Anne Beane Rudman* with
him on the brief; *Robert M. Morgenthau, District Attorney,*
attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

At issue is whether a juror's conduct during jury deliber-
ations warrants setting aside the verdict or, at least, re-
manding for further inquiry.

On the evening of September 19, 1978 Detectives Rynne,
Pepp, Beyrodt and Police Officer Flanagan were on street
crime patrol in an unmarked car in the area of Central
Park and 110th Street. All of the officers were in plain
clothes. Their assignment included the Central Park area
and in particular the Brambles section around 72nd Street,
where a series of beatings had recently taken place. At
approximately 10:00 P.M. the officers observed three young
men, one of whom was carrying a bat or a stick, hurriedly

exiting the park. The three entered a gypsy cab at 110th Street and 7th Avenue. The officers decided to follow the cab.

Within moments after they pulled behind the cab, all four officers, for various intervals of time, estimated at a minimum of four or five seconds for Detective Pepp and a maximum of one and one-half minutes for Detective Rynne, observed defendant, who was sitting in the back seat of the cab, brandishing a silver-plated gun in his raised hand. When the light turned red at 109th Street and Fifth Avenue, the officers pulled their car in front of the taxicab. Detectives Rynne and Pepp approached the cab on the driver's rear side, while Detective Beyrodt and Officer Flanagan approached the passenger's rear side, where defendant was sitting. When Detective Beyrodt reached the door, he saw defendant holding a gun in his hand between his legs. Beyrodt identified himself and defendant dropped the gun, a fully loaded .32 caliber Clarke revolver, to the floor of the cab. Beyrodt immediately retrieved it. Although operable, the cylinder had to be hand operated to fire the gun.

Defendant did not testify; nor did he call any witnesses in his behalf. In summation defense counsel argued that defendant and his friends had found the malfunctioning gun, which had been "dump[ed]" by someone on the floor of the cab, and that the police officers "put it" on him since he was closest to the gun. In support of this theory defendant challenged the ability of the police officers to see into the cab from their car. The officers' testimony was in conflict as to the distance between the two vehicles. Moreover, the cab driver never saw the gun. Nor was he threatened with it.

Approximately five hours after receiving the case the jury reported itself deadlocked. After a supplemental charge in which they were asked to harmonize their views the jurors were sent to dinner. They resumed deliberations that evening and eventually were sequestered overnight. The next morning the jury found defendant guilty of the only crime charged, criminal possession of a weapon in the third degree.

After trial, but before sentencing, defendant moved to set the verdict aside on the ground of juror misconduct

during the deliberations. After rendition of the verdict, one of the jurors, Olen Robinson, had told both the prosecutor and defense counsel that while walking from the courthouse to the restaurant, and again during the bus ride to the hotel, he looked into the rear windows of cars to test the credibility of the police officers. Concluding that they could, indeed, see into the back seat of cars, Mr. Robinson and another juror who had been the only jurors voting for acquittal throughout the first day of deliberations changed their votes to guilty.

The court denied the motion without a hearing, ruling that the juror was "simply drawing upon an everyday situation to verify the testimony of the police officer witnesses." Contending that he was deprived of his right to an impartial jury and of his right to confrontation by making the juror an unsworn witness against him, defendant has made this ruling the focal point of his appeal. We find that the verdict was not tainted by the juror's observations, and affirm.

Generally, "jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct within or without the jury room". (*People v De Lucia,* 15 NY2d 294, 296; see *McDonald v·Pless,* 238 US 264, 267-268; see, also, *People v Sprague,* 217 NY 373.) If not for this rule, every verdict would be vulnerable to attack, and jurors subject to continuous posttrial harassment by an unsuccessful party in an effort to uncover facts which might establish misconduct sufficient to invalidate the verdict. Consequently, where a motion for a new trial is based on a juror's statement concerning his misconduct or that of other members of the jury, "public policy reasons for holding such statements inadmissible must ordinarily override possible injustice to a defendant, for here [the] jury system itself is at stake." (*People v De Lucia,* 20 NY2d 275, 279.) But where a jury's deliberation is affected by "outside influence" (*Parker v Gladden,* 385 US 363, 364), a juror's statements are admissible to show that a defendant's rights were violated, "for here the danger to our jury system is minimal compared with the more easily proven prejudice to the defendant." (*People v De Lucia,* 20 NY2d, at p 279.)

Thus, a verdict may be overturned on the ground of improper influence where even well-intentioned jury conduct tends to put before the jury evidence not introduced at trial (*People v Brown,* 48 NY2d 388); or where a jury makes use of information not contained in the record, such as the defendant's address of which the deadlocked jury learned from a newspaper account of the case (*Bulger v McClay,* 575 F2d 407); or where jurors had made unauthorized visits to locations described in trial testimony (*People v Crimmins,* 26 NY2d 319; *People v De Lucia,* 20 NY2d 275, *supra*). If, however, the juror's conduct "was no more than the application of everyday perceptions and common sense to the issues presented in the trial", such conduct does not taint a subsequent verdict. (Cf. *People v Brown,* 48 NY2d, at p 393; *People v Harris,* 84 AD2d 63, 105.)

In our view, Mr. Robinson's conduct was not improper. All he did was to assess the credibility of the officers on the basis of an everyday experience — peering into a car through its rear window. His observations are in sharp contrast to what occurred in *People v Brown* (48 NY2d 388, *supra*), upon which defendant relies. There, a juror conducted a "test" which bore on the credibility of a key prosecution witness, a police officer. The officer had testified that just minutes before the robbery, while sitting in the rear seat of a van, he had observed the defendant driving a vehicle subsequently used as the getaway car. Only the officer's testimony placed the defendant at the scene of the crime. The defense challenged the accuracy of his identification, partially because the officer's observation of the driver, at a time when the two vehicles were stopped alongside each other, was made from a General Motors van, which was three feet higher than the car. During the trial one of the jurors tested the range of visibility afforded from the back seat of her own van, a Volkswagen. Before the verdict was reached, she reported to the jury that it was possible to see the face of a driver of an adjacent car from where the officer was sitting. In refusing to classify the test conducted by the juror as an application of everyday experience, the Court of Appeals concluded (p 394) that the juror's conduct was a "conscious, contrived experimentation" that would have been inadmis-

sible at trial because it was not comparable in "location, lighting, or type of van" (at p 395). Because of the nature of the experimentation, the court pointedly declined to consider what the result might have been if the juror had been placed by pure coincidence in a position to make her observations. (*People v Brown, supra,* at p 394.) The court also noted (p 394) that "the 'test' was directly material to a point at issue in the trial" and "created a substantial risk of prejudice to the rights of the defendant by coloring the views of the other jurors as well as her own."

In arriving at a verdict jurors are expected to draw upon their common sense and everyday experience. That experience is not static. All individuals, not only jurors engaged in deliberations, are constantly and continually exposed to a myriad of sights and sounds which touch their senses and affect the perspective from which they view the world. While his observations were material to an issue at trial and apparently colored his views, Mr. Robinson did not conduct an extraordinary test, but chose to make a random observation available to him both before and after the trial without the benefit of an especial expertise or a calculated experiment. Such conduct was not improper. He saw what every other juror could have seen, had they chosen to do so. Thus, he did not become an unsworn witness and place before the jury evidence otherwise inadmissible at trial. Unlike in *Brown*, the juror's observations were not contrived and the circumstances under which they were made were not dissimilar to the conditions under which the officers viewed defendant.

We have examined defendant's other contention and find that it is without merit.

Accordingly, the judgment, Supreme Court, New York County (DENNIS EDWARDS, J.), rendered June 13, 1979, convicting defendant of criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of two to four years, should be affirmed.

MILONAS, J. (dissenting in part). In my opinion, the instant matter should be remanded for a hearing, and the appeal held in abeyance pending the outcome thereof.

The defendant was convicted, following a jury trial, of criminal possession of a weapon in the third degree as the

result of an incident which took place on the evening of September 19, 1978. On that date, defendant was arrested after four police officers, on patrol in an unmarked police car, observed him sitting in the back seat of a taxicab holding a .32 caliber revolver. It is defendant's contention on this appeal that the verdict should be set aside on the ground of juror misconduct. At the trial, a major issue was whether the officers could see into the vehicle in which defendant was riding. One of the jurors, during a dinner break in the midst of the jury's deliberations and again when the jury had been sequestered for the night, conducted an experiment to test the validity of the officers' observation. On the walk to the restaurant and later when he was being transported by bus to the hotel, the juror in question, in an attempt to determine if the police officers were, in fact, able to perceive that which they testified about, looked into the rear windows of automobiles. The following morning, this juror and another, both of whom had previously favored acquittal, changed their votes to conviction. However, there is no assertion that the second juror's decision was influenced by the test. After the verdict had been announced, the juror described his experiment in a conversation with the prosecutor and defense counsel.

The Trial Judge, in declining to either set aside the verdict or to conduct a hearing in connection with the claim of juror misconduct, ruled that the juror was "simply drawing upon an everyday situation to verify the testimony of the police officer witnesses." According to the defendant, the court committed reversible error since the juror's experiment deprived him of an impartial jury and of his right to confrontation by making the juror an unsworn witness against him.

In *People v Brown* (48 NY2d 388), the Court of Appeals reversed the conviction of the defendant therein after 'one of the jurors had performed a test of the visibility afforded by her own Volkswagen van. The juror's van, the court noted, was of a different design from that of the General Motors van in which the police had been riding during the occurrence of events leading to the defendant's apprehension. In addition, she communicated the results of her

experiment, allegedly supporting the testimony of one of the police officers, to the rest of the jury panel. In that case, the trial court had held a hearing on the motion to set aside the verdict and concluded that the test had not been conducted at the scene of the incident and, moreover, that there was no evidence that the jury had been affected by an inherently prejudicial outside influence. However, the Court of Appeals declared (p 393) that improper influence upon a jury "embraces not merely corrupt attempts to affect the jury process, but even well-intentioned jury conduct which tends to put the jury in possession of evidence, not introduced at trial". The experiment performed by the jury in the case before it could not, the court stated, be characterized as an application of everyday experience, demonstrated by the fact that she felt compelled to conduct the exercise at all. Further, the court continued, the test was material to a point at issue in the trial, and, finally, the juror's conduct created a substantial risk of prejudice to the rights of the defendant.

Under the standards established in *People v Brown* (*supra*), the defendant in the instant case is clearly entitled to a hearing to ascertain whether the juror's experiment involved an "application of everyday experience" and whether there was a substantial risk of prejudice. In *Brown,* the court reversed the conviction despite the trial court's finding that there was no evidence that the rest of the jury had been affected by the juror's experiment. Therefore, it appears that if even only one juror has been influenced by an unauthorized test, substantial risk of prejudice may still be present. It is undisputed that in the instant situation, the juror's observations were material to an issue raised at trial.

The fact pattern in *People v Brown* (*supra*) is sufficiently analogous to the one under consideration here to require us to follow its precepts. At the very least, the defendant is entitled to a hearing.

KUPFERMAN, J. P., and MARKEWICH, J., concur with SULLIVAN, J.; MILONAS, J., dissents in part in an opinion.

Judgment, Supreme Court, New York County, rendered on June 13, 1979, affirmed.