OPINION OF THE COURT
Shirley R. Levitt an, J.
Defendant was convicted of the crimes of conspiracy in the second degree (Penal Law, § 105.15), criminal sale of a controlled substance in the first degree (Penal Law, § 220.43) and criminal possession of a controlled substance in the second degree (Penal Law, § 220.18). He now moves pursuant to CPL 330.30, subd 2) to set aside the verdict on the ground that there occurred improper conduct by jurors that substantially prejudiced his right to a fair trial (People v Cocco, 305 NY 282; People v Marrero, 83 AD2d 565).
In response, the People assert defendant has failed to demonstrate by a preponderance of the evidence that any alleged juror misconduct created a substantial risk of prejudice (Snediker v County of Orange, 58 NY2d 647; People v Rhodes, 92 AD2d 744).
The charges against defendant stem from the allegation that he conspired with two others, Thomas Frost and Kevin Green, to possess and sell heroin, on various dates between February 14,1981 and April 13,1981. The majority of the evidence presented against defendant was supplied by a paid informant, and admitted former drug *1088 dealer. During the investigation, the paid informant was the only person working in conjunction with the police to speak with defendant personally. With the exception of one brief and reasonably innocuous telephone conversation, none of these conversations were tape recorded. During the course of the trial prior to any recesses the jurors were constantly admonished not to discuss the case in any way, shape or form. Also, in the early stages of the trial the court confiscated notes from one of the jurors who was found writing them in the jury box without the permission of the court.
On June 3, 1982, defendant was convicted of the aforementioned charges and acquitted of two other counts of the indictment which stemmed directly from the events of March 29, 1981. While testifying, the informant admitted fabricating the factual circumstances of a meeting between himself and defendant on March 29.
Following the rendering of the guilty verdict but before sentencing, defense counsel was approached by a woman who was noted by the court to have observed the entire trial. This lady informed defense counsel that she had witnessed jurors outside of the court during the course of the trial discussing the case prior to deliberations. Upon motion of the defendant and on consent of the People, a fact-finding hearing was held pursuant to CPL 330.40 (subd 2, par [f]) to determine the extent, if any, of juror misconduct. At this hearing juror No. 3 was called to testify. He did not recall any predeliberation comments about defendant’s innocence or guilt. However, he did recall another juror taking notes and talk pertaining to defense counsel but not in relation to his income. To help refresh his recollection, juror No. 3 was asked to take home copies of four tapes defense counsel had made of his conversation with the nondeliberating jurors.
When the hearing was reconvened not only was the recollection of juror No. 3 refreshed, but when confronted by the allegation of the alternate juror that juror No. 3 had stated defendant was guilty he specifically denied it. He also recalled that the same alternate juror who had accused him of predeliberation judgment had, during a luncheon recess, told jurors that she was informed by her *1089 daughter who lived in Harlem that defendant “has been operating up here for a long time * * * He’s up there with the big guys. He’s a drug dealer.” Juror No. 3 testified that the alternate juror’s statement became “common knowledge” to the whole jury. He also stated that not only did juror No. 11 take notes, but these notes were used to clarify dates during deliberations.
To investigate further, defendant’s previous allegations of misconduct and the new allegation that the alternate juror stated defendant was a drug dealer, six other deliberating jurors and the alternate juror were called to testify. Although each juror had varying degrees of recollection, relevant testimony was produced concerning each allegation of misconduct. Some jurors only recalled discussions with the alternate juror on the pervasiveness of drug and drug dealing in Harlem and did not recall any specific comments in reference to defendant. Juror No. 8, however, recalled that the alternate juror stated that her daughter lived in Harlem and defendant was “a big name in drug dealing”. He stated further that although he tried to be as fair and honest as he could, the statement “subconsciously” affected his deliberations.
Despite inconsistencies in specifics, it is clear there existed some predeliberation comments by jurors, including opinions as to guilt or innocence of the defendant and that juror No. 11 kept notes which were used during deliberations. Juror No. 11 admitted taking notes and most other jurors noticed his doing so. These notes, not now available to the court, contained names, dates and events and were taped to the wall in the jury room when deliberations commenced.
It is also clear that there occurred discussions regarding defense counsel’s ability, background and income. According to juror No. 8 the implication of defendant retaining such counsel was that he had to be a drug dealer.
In the case at bar, the court is confronted with four separate instances of misconduct on the part of the jurors. Therefore, it is necessary to view their cumulative effect on defendant’s right to a fair trial. It is clear that the comment by the alternate juror that defendant was a drug dealer and the implication that for defendant to afford defense *1090 counsel he had to be engaging in illicit activities amounted to an improper influence on the jury’s deliberation and placed before the jury information which was not contained in the record (see People v Smith, 87 AD2d 357, 360, affd 59 NY2d 988). The effect of this extraneous information upon the jury served only to bolster the weak testimony of the paid informant. Not only was the informant’s testimony nebulous, but the informant himself proved to be of questionable credibility. While on the stand he admitted falsifying reports as to the events of March 29, 1981. He initially reported that defendant had personally given him samples of heroin and cut drugs and only later admitted to the law enforcement officers that this did not occur. He testified he fabricated the story to help support the case. On cross-examination he admitted lying 22 times in his first report on the events of March 29. Also on cross-examination, the informant was questioned about his testimony as an informant in another case against one Vernon Hunt where he used defendant’s name in an admitted lie to help bolster the case against Hunt. Given these weaknesses in the People’s case, any possible coloring of the views of the jurors created a substantial risk of prejudice to the rights of defendant (People v Brown, 48 NY2d 388, 394; People v Cocco, 305 NY 282, 287, supra).
There also exists the likelihood that defendant was prejudiced by the jury’s premature discussions of the case. By ignoring the court’s admonition not to discuss the case prior to deliberation there exists the possibility some members of the jury had formed conclusions prior to defense counsel’s summation and the charge of the court on the law. In doing this, defendant’s right to have his guilt or innocence determined by a jury of 12 persons deliberating as one may have been violated (see People v Gordon, 77 AD2d 662, 664).
Likewise, the note taking by a juror and their use during deliberations may have substantially prejudiced the rights of defendant. In People v DiLuca (85 AD2d 439), the court held that the taking of notes is left to the discretion of the trial court. However, before this practice was allowed, it was mandatory for the court to give the jury cautionary instructions on the proper use of their notes during their *1091 deliberations. In the case at bar, not only were these instructions not given (as the court knew nothing of this matter), but the court specifically forbade a juror from taking notes during the first day of testimony and removed them from his person. The absence of instructions in and of itself is grounds for a mistrial (People v DiLuca, supra, p 446).
In summation, the People may argue that separating the four acts of juror misconduct, defendant has not been prejudiced. However, the cumulative effect of these actions, especially where the linchpin to the prosecutor’s case is a witness of dubious reliability, makes it impossible for the court to conclude that defendant has not carried his burden by a preponderance of the evidence. These various extrinsic matters shore up a witness of questionable trustworthiness. (Compare People v Friedgood, 58 NY2d 467, where defendant’s claim of juror misconduct was only based upon hearsay allegations contained in defense counsel’s affirmations.) The verdict in this case was affected by the outside influences and extraneous material (People v Marrero, 83 AD2d 565, supra). Therefore, a new trial in that matter is ordered (CPL 330.50, subd 2).