AUDREY HUNT, APPELLANT AND CROSS-APPELLEE, V. METHODIST HOSPITAL AND JOHN SMITH, M.D., APPELLEES, AND JAMES M. HORROCKS, M.D., APPELLEE AND CROSS-APPELLANT.
485 N.W.2d 737

Filed June 5, 1992.    No. S-89-444.

Daniel B. Cullan and Virginia L. Cullan, of Cullan & Cullan, for appellant.

Thomas J. Shomaker and Clark J. Vanskiver, of Sodoro, Daly & Sodoro, for appellee Methodist Hospital.

Fredric H. Kauffman and Kathleen A. Jaudzemis, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Smith.

William M. Lamson, Jr., and Lyman L. Larsen, of Kennedy, Holland, DeLacy & Svoboda, for appellee Horrocks.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The plaintiff, Audrey Hunt, was admitted to the defendant

Methodist Hospital on July 11, 1984, by the defendant Dr. James M. Horrocks, an internist, for treatment of an ulcer on her left foot. After consultation with the defendant Dr. John Smith, a vascular surgeon, it was determined that an arteriogram should be performed to determine whether an arterial bypass operation might improve the blood flow to the plaintiff's leg.

An arteriogram was performed by the defendant Smith on July 13, 1984. An arterial bypass operation was performed on July 16, 1984. This malpractice action is concerned only with complications which developed following the arteriogram procedure and resulted in serious injury to the plaintiff's arm.

The arteriogram was performed by introducing a catheter into the patient's right axillary artery. Bleeding at the site where the artery is punctured is the most common risk of an arteriogram, and the plaintiff was monitored for this complication. No nurse, doctor, or medical student noted any bleeding at the puncture site during the first 6 hours following the procedure, which is the critical time period following the arteriogram.

On July 17, 1984, a large ecchymotic area was noted by a nurse on the plaintiff's posterior right upper arm. An ecchymosis is evidence of blood in the tissue and is very common following puncture of an artery or vein.

The plaintiff was monitored by Horrocks, Smith and his associate, Dr. Eugene A. Waltke, and by medical students and nurses. From July 17 through 21, 1984, there were no significant findings relating to Hunt's right arm. On July 21, the physicians diagnosed a venous thrombosis in the plaintiff's right arm because of massive swelling in her arm. The physicians then treated her arm for this condition.

From July 21 to 25, there was no evidence of permanent paresis in the plaintiff's arm, and it appeared that she was responding to the treatment. On July 25, the plaintiff's condition changed in that her right arm became pale and cool, and there was no pulse. Following these changes, Dr. Waltke performed surgery on the arm and discovered that the plaintiff was bleeding from the axillary artery. Dr. Waltke performed that surgery because Dr. Smith was out of town.

The blood from the leaking puncture site compressed the artery, so that the blood flow to the nerves in the lower part of the arm and hand was inadequate. As a result, some of the nerves in the lower extremity died, and the plaintiff now has a claw hand and has lost the use of her right arm.

The case was finally tried in 1989. The jury returned a verdict for the defendants, and the plaintiff has appealed.

In the plaintiff's first assignment of error, she alleges that the trial court erred in refusing to give a requested instruction that Dr. Waltke was the agent of Dr. Smith and that if the jury found that Dr. Waltke was negligent, it should find that Dr. Smith was negligent. In her brief, the plaintiff does not argue why it was error for the trial court to refuse her requested instruction. Instead, she argues that the trial court erred by refusing to allow her to amend her petition to conform to the evidence that Waltke was the agent of Smith. No error was assigned regarding the refusal of the trial court to permit the amendment, which was not requested until the fourth day of testimony, just before the plaintiff rested.

Dr. Waltke was not a party to the action and is not mentioned in any place in the third cause of action in the sixth amended petition, which is the cause of action in which the specifications of negligence alleged against Smith were made. Specifically, the plaintiff alleged that Smith was negligent in failing to properly monitor the plaintiff, in failing to timely diagnose the complications resulting from the angiography, in failing to utilize ultrasound, and in failing to pursue conservative treatment of the plaintiff.

In the order on the pretrial conference made on February 17, 1989, the trial court noted that the issues had been framed and the plaintiff's specifications of negligence as to each defendant had been narrowed and that the plaintiff's claim against each defendant was based upon specific acts of negligence. The order set out both the "Uncontroverted Facts" and the "Issues of Fact, *and No Others*, Remaining To Be Litigated upon the Trial." (Emphasis supplied.) This order was effective as a limitation of issues and was approved "as to form and consent [sic]" by all counsel, including the counsel for the plaintiff.

The instruction requested by the plaintiff went further than

merely instructing that Waltke was the agent of Smith. It also submitted the issue of negligence by Waltke to the jury, and there was no evidence to support a submission of that issue to the jury. There was no testimony by any of the plaintiff's expert witnesses to the effect that Waltke had deviated from the standard of care.

The trial court refused to give the requested instruction because there was no evidence that Dr. Waltke had violated the applicable standard of care and because the issue of respondeat superior had never been pled. The trial court refused to allow the plaintiff to amend the petition at the conclusion of the plaintiff's evidence because the amendment would have prejudiced the defendants in that the case had proceeded on the theory of specific acts of negligence by Smith, and the defendants were entitled to assume there was no issue as to negligence by Waltke.

The decision as to whether to allow or deny amendments to the pleadings after a trial has begun is a matter for the discretion of the trial court. *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988). "Pleadings . . . may not be amended at certain stages so as to change the issues . . . ." *Id.* at 767, 424 N.W.2d at 347. Because the plaintiff's requested amendment to the pleadings would have changed the issue of Smith's liability for negligence from liability for specific acts of negligence to include liability for unalleged negligent acts by Waltke, it was not error for the trial court to deny the plaintiff's request to amend the pleadings at the conclusion of the evidence.

There is nothing in the evidence to support a finding that Waltke was negligent in his treatment of the plaintiff. None of the plaintiff's expert witnesses testified that Dr. Waltke breached the applicable standard of care as to his diagnosis or operation on plaintiff.

Accordingly, the proposed amendment to the pleadings and the requested instruction were properly refused by the trial court.

For her second assignment of error, the plaintiff alleges that the trial court erred in refusing to allow Dr. Paul Somsky, on redirect examination, to respond to questions as to why he had

not reviewed the plaintiff's medical records prior to testifying at the trial. The answer expected was that Somsky, due to his medical condition, did not expect to testify and therefore did not have an opportunity to review the records before being called.

Prior to the trial, the plaintiff had designated Somsky as an expert witness. Due to a heart attack experienced by Somsky in April 1988, the plaintiff filed a motion to substitute another expert witness. Although that motion was sustained, the plaintiff never designated a substitute expert witness. On the second day of testimony, the plaintiff moved to submit a discovery deposition of Somsky taken by the defendants because Somsky was unable to testify in person due to his poor health. The trial court denied this request. Somsky then appeared at the trial, and the trial court instructed the plaintiff that Somsky was not to be questioned about his medical condition during his testimony.

At the trial Somsky volunteered on direct examination, at least twice, that he had not reviewed the plaintiff's medical records prior to taking the stand.

The extent to which a witness on redirect examination may explain testimony elicited on cross-examination lies primarily in the discretion of the trial court. *State v. Walker*, 225 Neb. 794, 408 N.W.2d 294 (1987).

In this case, Somsky's medical condition was not relevant to any of the issues because it did not have " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 721, 393 N.W.2d 250, 262 (1986). Accordingly, the trial court did not abuse its discretion in refusing to allow Somsky to explain on redirect the reason for his lack of familiarity with the plaintiff's medical records.

In her third assignment of error, the plaintiff argues that the trial court erred by excluding exhibit 12, a summary of nurses' notes regarding the plaintiff's right arm. The trial court sustained the defendants' objection to the offer of exhibit 12 because it was an incomplete summary of the plaintiff's medical records, all of which had already been received in evidence.

Exhibit 12 had been prepared by Dr. Delbert D. Neis, who testified as an expert witness for the plaintiff. To assist his testimony he had prepared and used exhibits 2 and 3, which were partial summaries of the plaintiff's medical records. On redirect examination the plaintiff offered exhibit 12, which was but another incomplete summary of the plaintiff's medical records that Neis had prepared. The trial court sustained the defendants' objection to exhibit 12. It was merely a partial summary of the plaintiff's records, which were already in evidence.

Exhibit 12 did not purport to be a complete summary of the plaintiff's medical records. It was, in fact, only a summary of some of the matters the plaintiff's witness felt were important. To that extent it was argumentative in nature and not a proper item of evidence. The plaintiff's witness was allowed to testify at length concerning the matters listed on exhibit 12, and there was no prejudice to any substantial right of the plaintiff in refusing the offer of exhibit 12.

Summaries may be allowed into evidence " 'when the volume of documents being summarized is so large as to make their use impractical or impossible . . . .' " *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. at 717, 393 N.W.2d at 259. That part of the hospital records which was summarized on exhibit 12 was not so voluminous that it was impossible for the jury to use.

> [A]n otherwise admissible and relevant summary may be excluded under Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)), which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*Id.* at 720-21, 393 N.W.2d at 261.

The plaintiff's final assignment of error alleges that the trial court erred in failing to grant a new trial on the ground of juror misconduct because certain jurors held presubmission discussions, contrary to the trial court's admonitions "not to discuss the case with anyone" and "not to form or express an opinion until such time as you have heard all the evidence and

the case is submitted to you for your deliberation and decision." By cross-appeal, the defendant Horrocks argues that the trial court erred in admitting the five affidavits of three jurors and a discharged alternate juror offered by the plaintiff in support of her motion.

In one affidavit a juror explains how certain evidence and the instructions influenced him. In another affidavit a juror declares that certain jurors discussed the case prior to submission and expressed her opinion as to how those discussions influenced the jurors. In two separate affidavits another juror explains how the evidence and instructions influenced him and declares that following a particular witness' testimony, there ensued a presubmission discussion among three or four jurors concerning the effect certain trial developments were having on the probable outcome of the case. The discharged alternate juror's affidavit reveals that presubmission discussions took place over a 5-day period and declares that these discussions prejudiced plaintiff's case.

Neb. Rev. Stat. § 27-606(2) (Reissue 1989) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

We have held that a juror may testify as to whether the jury considered prejudicial information emanating from sources extraneous to the evidence presented at trial, but that a juror's testimony may not be used to establish the effect of such information upon the jury or its influence on the jury or jury motives, methods, misunderstanding, thought processes, or

discussions during deliberations which entered into the verdict. *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987); *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978).

Thus, the affidavits were admissible only to show that presubmission discussions took place among certain jurors over 5 days of this 7-day trial. The other comments in the affidavits are entirely useless.

Neb. Const. art. I, § 6, and U.S. Const. amend. VII each guarantee the "right of trial by jury." As said in *City of Flat River v. Edgar*, 412 S.W.2d 537, 539 (Mo. App. 1967):

> Under the constitutional guarantee of jury trial, a party litigant is entitled, unless he waives the right, to have his case tried by twelve impartial qualified jurors. Implicit in "trial" by twelve impartial qualified persons is the concept that there be consideration of the issues and the evidence and deliberation thereon upon the part of all twelve . . . .

Derived from the constitutional concept of a right to a jury trial is the principle that "it is improper for jurors to discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court." *State v. Washington*, 182 Conn. 419, 425, 438 A.2d 1144, 1147 (1980); *State v. McDonald, supra*; *United States v. Nance*, 502 F.2d 615 (8th Cir. 1974), *cert. denied* 420 U.S. 926, 95 S. Ct. 1123, 43 L. Ed. 2d 396 (1975); *United States v. Klee*, 494 F.2d 394 (9th Cir. 1974), *cert. denied* 419 U.S. 835, 95 S. Ct. 62, 42 L. Ed. 2d 61; *People v. Gilyard*, 124 Ill. App. 2d 95, 260 N.E.2d 364 (1970); *City of Pleasant Hill v. First Baptist Church*, 1 Cal. App. 3d 384, 82 Cal. Rptr. 1 (1969). In *People v. Saunders*, 120 Misc. 2d 1087, 467 N.Y.S.2d 110, 113 (1983), the court stated that the jury's actions in ignoring the judge's admonition not to discuss the case prior to deliberations violated the "defendant's right to have his guilt or innocence determined by a jury of twelve persons deliberating as one . . . ." Finally, the court in *Pool v. C., B. & Q. R. Co.*, 6 F. 844, 850 (1881), stated: "There is no right more sacred than the right to a fair trial. There is no wrong more grievous than the negation of

that right. An unfair trial adds a deadly pang to the bitterness of defeat."

In cases where jurors have discussed the case with one another prior to deliberations, courts have uniformly found such conduct improper. *Edney v. Baum*, 44 Neb. 294, 62 N.W. 461 (1895); *State v. McDonald, supra*; *State v. Isley*, 195 Neb. 539, 239 N.W.2d 262 (1976); *State v. Drake*, 31 N.C. App. 187, 229 S.E.2d 51 (1976); *Winebrenner v. United States*, 147 F.2d 322 (8th Cir. 1945); *Glasgow Realty Company v. Metcalfe*, 482 S.W.2d 750 (Ky. App. 1972); *City of Pleasant Hill v. First Baptist Church, supra*; *People v. Hunter*, 370 Mich. 262, 121 N.W.2d 442 (1963).

The U.S. Court of Appeals for the Eighth Circuit issued the seminal opinion which has served as a guide for other jurisdictions on this issue. In *Winebrenner v. United States, supra*, the court held that instructions by judges advising jurors that they might discuss the case among themselves prior to submission is reversible error and in violation of the Fifth and Sixth Amendments to the federal Constitution. Several reasons were advanced for this conclusion:

> If . . . the jurors may discuss the case among themselves, either in groups of less than the entire jury, or with the entire jury, they are giving premature consideration to the evidence. By due process of law is meant "a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." The jury should not discuss the case among themselves because, first, they have not heard all of the evidence; second, they have not heard the instructions of the court as to how this evidence is to be considered by them, and neither have they heard the arguments of counsel.

147 F.2d at 328.

The court further noted the psychological implications of jurors' discussing a case prior to its submission for deliberation:

> A juror having in discussion not only formed but expressed his view as to the guilt or innocence of the defendant, his inclination thereafter would be to give special attention to such testimony as to his mind strengthened, confirmed or vindicated the views which he

had already expressed to his fellow jurors, whereas, had there been no discussion and no expression of tentative opinion, he would not be confronted with embarrassment before his fellow jurors should he change the tentative opinion which he might entertain from hearing evidence.

*Id.*

In *Pool v. C., B. & Q. R. Co.*, 6 F. at 850, the court in that case observed:

Now, the human mind is constituted so that what one himself publicly declares touching any controversy is much more potent in biasing his judgment and confirming his predilections than similar declarations which he may hear uttered by other persons. When most men commit themselves publicly to any fact, theory, or judgment they are too apt to stand by their own public declarations, in defiance of evidence. This pride of opinion and of consistency belongs to human nature.

Thus, a juror who has expressed his or her view in a discussion regarding facts or the guilt, innocence, or liability of the parties "would be inclined thereafter to give special attention to testimony strengthening or confirming the views already expressed to fellow jurors." *State v. Washington*, 182 Conn. at 426, 438 A.2d at 1147.

As confirmed by case law, the constitutional right in both civil and criminal cases protects parties from juror discussions prior to deliberations. Anything short of silence is juror misconduct, and at some point, nondeliberation dialogue prejudices a party and voids the trial.

However, in order for a new trial to be ordered because of juror misconduct, the party claiming the misconduct has the burden to show by clear and convincing evidence that prejudice has occurred. *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983); *State v. McDonald*, 230 Neb. 85, 430 N.W.2d 282 (1988). "Proof of mere indiscretion in the conduct of a juror is not sufficient to avoid a verdict unless the proof establishes that the juror's conduct was of such character that prejudice may be presumed." *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 515, 428 N.W.2d 152, 160 (1988); *Schwank v. County of Platte*, 152 Neb. 273, 40 N.W.2d 863 (1950). Moreover, the

"misconduct complained of must relate to a matter in dispute relevant to the issues in the case, and the misconduct must have influenced the jurors in arriving at a verdict." *Ellis v. Far-Mar-Co*, 215 Neb. at 743, 340 N.W.2d at 427.

The burden of the trial court in determining whether there is juror misconduct was first articulated in *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978). Therein, this court wrote:

> When an allegation of misconduct is made, and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred. If it occurred, the trial court must then determine whether it was prejudicial to the extent the defendant was denied a fair trial. If the trial court determines that the misconduct did not occur, or that it was not prejudicial, adequate findings should be made so that the determination may be reviewed.

*Id*. at 204-05, 266 N.W.2d at 754. See, *United States v. McKinney*, 429 F.2d 1019 (5th Cir. 1970), rev'd on rehearing 434 F.2d 831; *State v. McDonald, supra*. Thus, a judge must conduct an evidentiary hearing to determine whether a party was denied a fair trial; in any event, should the court conclude that no misconduct or prejudice occurred, it must make adequate findings so that the ruling may be reviewed.

*State v. Steinmark, supra*, is a useful case in respect to the trial court's duty to provide a satisfactory hearing on the juror misconduct. *Steinmark* involved a defendant who asserted that the trial court did not afford him an adequate hearing in regard to juror misconduct. Presented at the hearing was an affidavit in which a juror testified that several other jurors repeated rumors they had heard about the defendant and had drawn conclusions regarding several pieces of evidence. In vacating the denial of a new trial, we declared that the "matters alleged in the affidavit [were] a sufficient showing in support of the allegations of misconduct to require an evidentiary hearing to determine whether misconduct occurred and whether it was prejudicial . . . ." *Id*. at 205, 266 N.W.2d at 754. We also recited the obligation of the trial court in determining the validity of

misconduct allegations and explained that the determination of misconduct was a question for the trial court, which question required an "independent evaluation of all the circumstances in the case." *Id.* In conclusion, we wrote:

> The record indicates that the issue of the alleged misconduct of the jury and its effect upon the verdict in this case *was resolved in a summary manner*. While we are not prepared to say, upon the basis of the present record, that the defendant is entitled to a new trial, we believe the cause should be remanded for a further hearing upon the matter of misconduct of the jury as alleged in the motion for new trial.

(Emphasis supplied.) *Id.*

The uncontradicted affidavits in this case establish that juror misconduct occurred. It thus became the trial court's duty to determine whether that misconduct prejudiced the plaintiff. Accordingly, the cause is remanded with the direction that the trial court conduct an evidentiary hearing to determine what was said during the presubmission discussions and whether those discussions prejudiced the plaintiff.

REMANDED WITH DIRECTION.

HASTINGS, C.J., not participating.

BOSLAUGH, J., dissenting.

I dissent only from that part of the opinion which holds that the misconduct alleged in the affidavits of two jurors and one alternate requires that the cause be remanded and the trial court directed to conduct a further evidentiary hearing to determine whether what was said by the jurors during the presubmission discussions prejudiced the plaintiff.

Neb. Rev. Stat. § 27-606(2) (Reissue 1989) severely restricts the evidence which can be considered in determining whether juror misconduct or prejudice occurred. Only evidence of "*extraneous prejudicial information* . . . improperly brought to the jury's attention" or "*outside influence*" improperly brought to bear upon any juror may be considered as the basis for remanding the cause in this case. (Emphasis supplied.) In this case there was neither.

As we said in *Rahmig v. Mosley Machinery Co.*, 226 Neb.

423, 455, 412 N.W.2d 56, 77 (1987):

> In Neb. Evid. R. 606(2), the important phrase is "extraneous prejudicial information," and within that phrase the crucial word is *extraneous*, which means "existing or originating outside or beyond : external in origin : coming from the outside . . . brought in, introduced, or added from an external source or point of origin." Webster's Third New International Dictionary, Unabridged 807 (1981).

I believe the majority opinion erroneously equates pre-submission discussion among some of the jurors with extraneous prejudicial information or outside influence. It then declares that "[a]nything short of silence is juror misconduct" and appears to adopt a per se rule requiring the trial court in such cases to conduct extensive evidentiary hearings to determine whether prejudice occurred.

An example as to how this statute is applied in juror misconduct cases is found in *Watkins v. Taylor Seed Farms, Inc.*, 295 Ark. 291, 748 S.W.2d 143 (1988). In the *Watkins* case, it was alleged that two jurors had made these comments in the presence of the jury:

> (1) The first woman said, "W.B. 'Tuffy' Howard, (appellants' attorney), got custody of some children for a man and after the man got custody of the children, he murdered them." (2) A second woman replied, "Yes, that's the kind of man he is." These two jurors, whom Seymour claimed had made the remarks, also testified as a part of appellants' offer of proof. The first one, Mary Seale, denied having made any statements about Howard, but did remember hearing someone make them. The second juror, Donna Cornelison, testified that the jurors had discussed the attorneys but that she did not make nor recall any remarks, as those described by Seymour, having been made in the presence of the jury.

295 Ark. at 292, 748 S.W.2d at 144.

The Arkansas court held that this was not evidence of extraneous prejudicial information that had improperly been brought to the jury's attention. The court concluded by saying:

> Nonetheless, Rule 606(b) ensures that jury deliberations

should remain secret, unless it becomes clear that the jury's verdict was tainted by a showing of extraneous prejudicial information or some improper outside influence. The evidence the appellants proffer here is not included in the exception under Rule 606(b), and, therefore, allowing the testimony, we believe, would violate the public policy that protects the privacy of the jury room.

295 Ark. at 294-95, 748 S.W.2d at 145.

While the older cases seem to support the rule that the trial court is required to admonish the jury that they are not to discuss the case among themselves until it has been submitted to them, some of the modern cases indicate the rule is not universal. In *United States v. Klee*, 494 F.2d 394, 395-96 (9th Cir. 1974), the court stated:

In support of a motion for a new trial, *Klee presented an affidavit of one of the jurors which says that eleven of the fourteen jurors (including alternates) discussed the case during recesses and that nine of the jurors expressed premature opinions about Klee's guilt. If the affidavit is true, the jurors disregarded the court's admonition.*

While we are aware that most judges give similar admonitions to juries, we have never had occasion to pass upon either the propriety of or the necessity for such an admonition. *The circuits are not in agreement on the question.* See, *e. g.,* Winebrenner v. United States, 8 Cir., 1945, 147 F.2d 322; 23A C.J.S. Criminal Law § 1361 (1961). *But cf.* United States v. Carter, 10 Cir., 1970, 430 F.2d 1278, 1279; Rotolo v. United States, 5 Cir., 1968, 404 F.2d 316, 317; United States v. Viale, 2 Cir., 1963, 312 F.2d 595, 602.

(Emphasis supplied.)

In *United States v. Viale*, 312 F.2d 595, 602 (2d Cir. 1963), the court stated:

It has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded. Compare

Myres v. United States, 8 Cir., 174 F.2d 329. In any event, we hold that the trial judge did not commit any error in this matter, especially since counsel did not request such an instruction, and since such an instruction was in fact given the second day of the trial.

It seems to me that the showing made by the plaintiff at the hearing on the motion for new trial in this case falls far short of the clear and convincing evidence that is required as a basis for remanding the cause.

Generally, the misconduct alleged in the affidavits offered by the plaintiff pertains to discussions that took place among certain of the jurors prior to the case's being submitted to the jury for deliberation. The plaintiff offered five affidavits at the hearing on the motion for new trial. Four of the affidavits were from three jurors. The fifth affidavit was from an alternate juror who did not participate in the deliberations. Two of the affidavits related only to the thought processes of the jury and how the evidence and the instructions of the court influenced the verdict. These two affidavits clearly were inadmissible. A second affidavit from Gerald Klug, one of these jurors, mentioned discussion among a few jurors in the jury room as to how they felt certain factors were affecting the probable outcome of the trial. This affidavit contained a statement that "at no time were specific conclusions drawn from these comments."

The affidavit of Pamela Bahn stated in part:

> At each recess, Judge Clark instructed us not to discuss the case with our fellow jurors or others to make certain of a fair trial. However, unfortunately, several of the other jurors disregarded the Court's instruction. Up until the last two days of the trial there was a lot of discussion regarding either the lawyers' conduct or aspects of the case . . . . The comments were like one of the lawyers kept twitching with his hair, or, boy, this lawyer was good. . . .

Sharon L. Foster, who was the alternate juror, stated in her affidavit:

> In my opinion some of the jurors violated the judge's repeated instructions not to discuss the case until deliberations. . . .

. . . .

. . . The comments were in reference to the lawyers and doctors as well as Mrs. Hunt. These comments pertained to perceived competence or incompetence of all parties involved. A comment was made about Mrs. Hunt's business management style.

(Emphasis omitted.)

The affidavits reveal that the jurors felt great sympathy for the plaintiff, who, without question, received a serious injury as a result of complications following the arteriogram procedure. They also show that on the basis of the evidence and the instructions, the jury was compelled to return a verdict for the defendants.

It is also clear from the affidavits that the alleged jury misconduct consisted only of discussions among the jurors themselves about such matters as the attorneys' performance at trial and the case as presented by the evidence at the trial. There are no allegations that the jury considered extraneous prejudicial information or that outside influence was improperly brought to bear upon any juror.

There is no question that the jury's disregard of the trial court's admonition not to discuss the case prior to submission for deliberation was improper. The issue is whether there has been a sufficient showing by clear and convincing admissible evidence of misconduct and prejudice to require that the cause be remanded and further hearings held.

In *State v. McDonald*, 230 Neb. 85, 94, 430 N.W.2d 282, 288 (1988), this court held that where jury misconduct "involves juror behavior only, the burden to establish prejudice rests on the party claiming the misconduct." In *McDonald*, evidence of alleged jury misconduct was presented at the hearing on the defendant's motion for new trial. That evidence consisted of testimony by defense trial counsel's wife that she overheard two jurors discussing evidence which had been presented at trial. We affirmed the trial court's finding that the defendant was not prejudiced by the jury's misconduct.

In this case, the majority opinion cites no case where the jury was properly admonished and instructed, but presubmission discussion of the case by the jurors was found to be so

prejudicial as to require a new trial or a further hearing. Most of the cases cited in the majority opinion which found prejudice involved the jury's considering extraneous information or being improperly influenced by outside sources.

In holding that the cause should be remanded and an evidentiary hearing held to determine what was said during presubmission discussion by some of the jurors and whether those discussions prejudiced the plaintiff, the majority cites *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978). However, the *Steinmark* case involved alleged jury misconduct by consideration of extraneous prejudicial information during deliberation.

> " 'Extraneous influence' has been construed to cover publicity received and discussed in the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between jurors and third persons, including contacts with the trial judge outside the presence of the defendant and his counsel. By contrast, evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict . . . is not competent to impeach a verdict."

*United States v. Wilson*, 534 F.2d 375, 378-79 (D.C. Cir. 1976), quoting *Government of Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir. 1975).

It is clear from the affidavits submitted at the hearing on the plaintiff's motion for new trial that the only misconduct which the plaintiff alleges occurred was the jury's violation of the trial court's admonition not to discuss the case prior to deliberation. There are no allegations that any juror considered extraneous information or was improperly influenced by outside sources.

*Winebrenner v. United States*, 147 F.2d 322 (8th Cir. 1945), described as a seminal case in the majority opinion, was decided by a divided court. In that case the trial court had incorrectly instructed the jury that it was permissible for the jurors to discuss the case among themselves before the case had been submitted to them. In his dissent to the majority opinion which ordered that the judgments be reversed and the cause remanded for a new trial, Judge Woodrough observed that "[n]o normal

honest Americans ever worked together in a common inquiry for any length of time with their mouths sealed up like automatons or oysters." 147 F.2d at 330. He further stated, "The defendants had no right to, and I assume they had no interest to have the jurors subjected to extraordinary, suspicious and unnatural silence among themselves." *Id.*

The trial court's order overruling the plaintiff's motion for a new trial and its not conducting a further hearing on the matter of the alleged jury misconduct were within the trial court's discretion and should not be overturned except for an abuse of discretion. *State v. Robbins*, 207 Neb. 439, 299 N.W.2d 437 (1980); *United States v. Nance*, 502 F.2d 615 (8th Cir. 1974). See, also, *U.S. v. Cuthel*, 903 F.2d 1381 (11th Cir. 1990); *United States v. Edwards*, 696 F.2d 1277 (11th Cir. 1983); *United States v. Campbell*, 684 F.2d 141 (D.C. Cir. 1982); *United States v. Wilson, supra.*

I would affirm the judgment of the district court.

GRANT, J., joins in this dissent.